PLEASE DATE STAMP
AND RETURN

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**LUIS ALFONSO TORRES HERNANDEZ**
13312 Oriental Street,
Rockville, MD 20853

        Plaintiff,

**v.**

**JAMES ABRAHAM LLOYD**
*Individually and in his official capacity as a*
*Baltimore City Police Officer*
2021 Emmanuel CT
Gwynn Oak, MD 21207

And

**JUAN DIAZ**
*Individually and in his official capacity as a*
*Baltimore City Police Officer*              **Case No.: 24C23001343**
5384 Eliots Oak Road
Columbia, MD 21044

And

**TROY TAYLOR**
*Individually and in his official capacity as a*
*Baltimore City Police Officer*
6 Travis Court
Rosedale, MD 21237

And

**MANUEL LARBI**
*Individually and in his official capacity as a*
*Baltimore City Police Officer*
220 Staysail Drive
Joppa, MD 21085

And

**MAYOR AND CITY COUNCIL OF**
**BALTIMORE**

1

Serve On:
Ebony Thompson, Esq.
Acting City Solicitor
City Hall - Room 250
100 N. Holliday Street
Baltimore, Maryland 21202

Defendants.

## FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, Luis Alfonso Torres Hernandez, by and through his attorneys, Timothy F. Maloney, Matthew M. Bryant, and Joseph Greenwald & Laake, P.A., and Bobby Zirkin, Esq. and Zirkin and Schmerling Law Office, files this First Amended Complaint and Jury Demand and adopts, incorporates, and re-alleges the allegations in all previous complaints and sues the Defendants James Lloyd, Juan Diaz, Troy Taylor, Manuel Larbi, and Mayor and City Council of Baltimore and states for cause as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter and all parties pursuant Md. Code, §§ 6-102 and 103 of the Courts & Judicial Proceedings Article ("C.J.P.").

2. Venue is properly before this Court pursuant to C.J.P. §§ 6-201 and -202 because Defendant Lloyd was employed in Baltimore City, Defendant Diaz was employed in Baltimore City, and Defendant Mayor and City Council of Baltimore is based in this jurisdiction.

## NOTICE

3. On July 21 2020, Plaintiff submitted a timely notice to the Mayor and City Council of Baltimore to comply with the Local Government Tort Claims Act.

## PARTIES

4. Plaintiff is an adult resident of the State of Maryland, residing at 13312 Oriental Street in Montgomery County, Maryland.

5. Defendant Mayor and City Council of Baltimore is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution. At all times mentioned, Defendant Mayor and City Council of Baltimore employed the individual defendants as sworn police officers with the Baltimore City Police Department.

6. Defendant James Lloyd was, at all relevant times, employed as a Sergeant with the Baltimore City Police Department Homicide Unit, and acted in his official capacity and within the scope of his employment. The Baltimore City Police Department issued Defendant Lloyd a service firearm, provided him with a badge and arrest powers, provided him with access to law enforcement databases, and provided Defendant Lloyd with a gray unmarked Ford Fusion police vehicle all of which were used to commit these crimes.

7. Defendant Juan Diaz was, at all relevant times, employed as a Detective with the Baltimore City Police Department Homicide Unit, and acted in his official capacity and within the scope of his employment.

8. Defendant Troy Taylor, was at all relevant times, employed as a Detective with the Baltimore City Police Department Homicide Unit, and acted in his official capacity and within the scope of his employment.

9. Defendant Manuel Larbi, was at all relevant times, employed as a Detective with the Baltimore City Police Department Homicide Unit, and acted in his official capacity and within the scope of his employment.

## FACTS COMMON TO ALL COUNTS

10. On or around May 2020, Plaintiff was working in Baltimore City on a customer's residence when Defendant Lloyd stopped to speak with one of Plaintiff's workers about a patio project at his home.

11. Plaintiff reached out to Defendant Lloyd two days later regarding the project and Defendant expressed interest in hiring Plaintiff to build a stone patio. Plaintiff provided a quote to Defendant of $7,000, and later commenced work on the stone patio.

12. Plaintiff constructed a stone patio at Defendant Lloyd's residence as requested by Mr. Lloyd.

13. Upon completion of the project, Defendant expressed his satisfaction with Plaintiff's work. Specifically, on June 12, 2020, Defendant Lloyd sent the following text message to the Plaintiff praising his "professionalism and quality workmanship" for the work completed at Defendant Lloyd's residence:

Fri, Jun 12, 3:02 PM

...Just want to say THANK YOU again to you and your team for the professionalism and quality workmanship!

May God Continue To Bless You and Yours

14. On or around June 18, 2020, Defendant Lloyd called Plaintiff because he complained about some minor issues with the pavers.

4

15.     Plaintiff drove to Mr. Lloyd's residence and inspected the patio. Mr. Lloyd's fiancé and Detective Diaz were present. Plaintiff agreed to repair the issue. Defendant Diaz told Plaintiff that this patio is "not worth $7,000.00." Although the patio was constructed to the size specifications Mr. Lloyd requested, Defendant Lloyd's girlfriend requested that the patio be expanded and made larger by two feet on each side. Plaintiff agreed to enlarge the patio and Defendant Lloyd would only need to pay for the extra materials and the at-cost price of the labor for the subcontractor to perform the work.

**June 25, 2020**

16.     On June 25, 2020, Defendant Lloyd was on duty from 5:00 a.m. to 2:00 p.m. He claimed he was entitled to pay for working these hours and submitted timesheets for these hours.

17.     Defendant Lloyd ordered several homicide detectives under his supervision and control to be present at his house in Gwynn Oak when Plaintiff arrived. Specifically, Defendant Lloyd ordered Baltimore City Police Detectives Troy Taylor, Manuel Larbi, and Juan Diaz to be present at his house. These officers were on duty and acting within the scope of their employment with the Baltimore City Police Department. All of these officers were there at the direction of defendant Lloyd, were on duty, and submitted timesheets for their time following Lloyd's directions that date.

18.     A few days prior to June 25, 2020, Defendant Lloyd directed Detective Larabi to run a criminal records check and motor vehicle check on Plaintiff. Defendant Lloyd instructed Larabi to do these criminal records checks on Plaintiff for the purpose of extorting Plaintiff.

19.     At approximately 9:30 a.m., Plaintiff met Defendant Lloyd at his home located at 2021 Emmanuel Court in Woodlawn, Maryland 21207. Upon arrival, Plaintiff saw his crew at the house and a minivan with dark tinted windows blocking the driveway and his crew's vehicle.

20. The minivan was a police vehicle owned by Baltimore City and driven to Mr. Lloyd's residence by Defendant Lloyd's fellow officers in the Homicide Unit. Specifically, Baltimore City Police Officer Troy Taylor and Manuel Larbi traveled to Mr. Lloyd's residence in the minivan.

21. Defendant Diaz drove a Baltimore City police vehicle to Defendant Lloyd's residence.

22. Defendant Lloyd exited his unmarked Baltimore City police vehicle, a Ford Fusion, that was parked behind the minivan. Detective Lloyd's service firearm was visible and when he approached Plaintiff he said, "We have problems. Where is my contract?"

23. It is alleged and believed that Detective Lloyd intentionally showed Plaintiff his firearm to install fear in the Plaintiff and induce him to give him money.

24. Defendant and Plaintiff went to the back of the house where Defendant asked Plaintiff to see his driver's license. When Plaintiff asked why he needed to see his license, Defendant pulled out his badge and showed it to him to indicate it was for law enforcement purposes.

### Unauthorized Use of Law Enforcement Databases to Aid Defendant Lloyd's Illegal Conduct

25. The Baltimore City Police Department has enacted policies to limit law enforcement officers access to confidential law enforcement databases exclusively for legal law enforcement purposes and not to extort members of the public or use the information in these databases for the officer's personal gain. For example, Policy 1301 provides that "NCIC information is only to be used for legitimate criminal justice purposes." Baltimore City Police Department, Policy 1301 "National Crime information Center" (11 June 2017). It is believed and alleged that the Baltimore City Police Department only permits use of NCIC, CLEAR,

6

dashboard, records of the motor vehicle administration, and other confidential law enforcement databases to advance and support the agencies goals and prohibits the use of these databases for an officers' personal purposes or personal benefit.

26.     Detective Troy Taylor ran Plaintiff's driver's license and license plate through law enforcement databases to aid Defendant Lloyd. Detective Troy Taylor had access to these law enforcement databases solely as a result of his employment as a sworn officer with the Baltimore City Police Department. Detective Taylor discovered that Plaintiff had a suspended driver's license, and he provided Defendant Lloyd with this information.

27.     Defendant Lloyd informed Plaintiff that his license was suspended because of child support. Defendant Lloyd told Plaintiff that he would arrest him unless he got his money back that Defendant Lloyd had already paid Plaintiff.

28.     Juan Diaz, a Baltimore City police officer, approached Defendant and Plaintiff while they were at the back of the house. His gun and badge was visible. Detective Diaz told Plaintiff, "all you have to do is give his money back." Defendant Diaz made these comments – while armed with a firearm and under the implicit threat of arrest – in an attempt to intimidate and implicitly coerce Plaintiff to give Defendant Lloyd money.

29.     Defendant Lloyd then called Manuel Larbi and Troy Taylor, the Baltimore City police officers waiting in the van, and asked them to take Plaintiff downtown because he was driving on a suspended license. The officers approached Plaintiff with their badges and guns visible. Plaintiff feared for his safety.

30.     Defendant Lloyd told Plaintiff that they could solve the dispute if Plaintiff gave him his money back he had paid for the deck project Plaintiff had constructed. Defendant Lloyd asked Plaintiff what bank he used. He told them that he used Navy Federal Credit Union.

7

31.     Defendant Taylor aided Defendant Lloyd by searching for the nearest bank location so Defendant Lloyd could transport him to that location to get Plaintiff's money.

32.     Fearing for his safety, Plaintiff entered into Defendant Lloyd's police vehicle. Before Defendant Lloyd began driving to the bank, Plaintiff told the Defendant Lloyd that he did not want any problems. In response, Defendant Lloyd said, "Problem would be if I take you in the woods." Defendant Lloyd's statement was a thinly veiled threat that he could shoot Plaintiff in the woods with his police issued firearm.

33.     Using his police vehicle, Defendant Lloyd drove Plaintiff to a Navy Federal Credit Union located at 6651 Ritchie Highway in Glen Burnie, Maryland.

34.     Defendant Lloyd kept Plaintiff in his custody and control. Defendant Lloyd made this clear when he told Plaintiff several times: "You are going to give me my money back and I'm going to give you freedom."

35.     When Plaintiff arrived at the bank, he exited the car and entered the bank to request a cashier's check made out to Defendant for $3,500. The bank teller asked for Plaintiff's identification but his driver's license was in the possession of Defendant Lloyd. Plaintiff had to go outside to retrieve his driver's license from Defendant Lloyd to obtain the cashier's check. Plaintiff then gave the check to Defendant.

36.     Defendant Lloyd would later deposit this check. Defendant Lloyd did not return this stolen money to Plaintiff.

37.     Defendant Lloyd then drove Plaintiff back to Defendant Lloyd's home where Plaintiff left his vehicle. Two police officers were still at Plaintiff's residence. Defendant Lloyd released Plaintiff from his custody but Plaintiff did not feel that he could drive away in his vehicle because Defendant Lloyd told him his driver's license was suspended. Apparently

8

annoyed that Plaintiff had not driven away from his house, Defendant Lloyd called Plaintiff and asked him why he had not yet left his residence. When Plaintiff told him he was fearful Defendant Lloyd or his fellow officers would arrest him if he drove away for driving on a suspended driver's license, Defendant Lloyd guaranteed Plaintiff he would not be arrested and ordered him to just leave.

38.     Defendant Lloyd, Defendant Diaz, Defendant Larbi, and Defendant Taylor were on duty as sworn law enforcement officers with the Baltimore City Police Department when this incident took place. The individual defendants provided material aid, support, and assistance in Lloyd's extortion of Plaintiff by assisting him and providing the perception that Defendant Lloyd was acting with the power, authority, and the force of law conferred by the Baltimore Police Department. At no time did Defendant Diaz, Defendant Larbi, and Defendant Taylor intervene to aid Plaintiff and stop Defendant Lloyd's extortion and other torts committed against Plaintiff.

39.     On June 25, 2020, Plaintiff reported the incident. Officer Agard #6138 responded to 21208 Reisterstown Road and took a police report from Plaintiff. On June 29, 2020, Detective Singh followed up with Plaintiff.

40.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in the form of emotional pain and suffering, extreme anxiety, emotional distress, economic loss, humiliation, intimidation, fear for his life and safety, and loss of enjoyment of life. Plaintiff's anxiety and fear caused Plaintiff to stop working in the Baltimore area for a period of time, which was the location of the vast majority of Plaintiff's work. Plaintiff continues to suffer from bouts of anxiety as a result of Defendants' illegal conduct.

**Criminal Prosecution**

***State v. James Lloyd***

9

41.     On July 9, 2020, in *State of Maryland v. James A. Lloyd*, Case No.: D-08-CR-20-018882 (District Court of Maryland), the State of Maryland charged Defendant James Lloyd with extortion in violation of C.L. § 3-701(b) and kidnapping in violation of C.L. § 3-502.

42.     A Grand Jury sitting in the Circuit Court for Baltimore County subsequently charged Defendant Lloyd with misconduct in office, extortion in violation of C.L. § 3-701(b), and kidnapping in violation of C.L. § 3-502. *See State v. Lloyd*, Case No.: C-03-CR-20-002289 (Circuit Court for Baltimore County, MD).

43.     On June 15, 2022, Defendant Lloyd entered a guilty plea under *Alford v. North Carolina* to one count of misconduct in office.

44.     On July 18, 2022, the Court sentenced Defendant Lloyd to three years of imprisonment with all but one year suspended.

### Pattern or Practice of Civil Rights Violations

### *In 2016, the U.S. Department of Justice Found a Pattern or Practice of Conduct that Violates the U.S. Constitution*

45.     Defendant Corporal Lloyd's conduct, including the deprivation of constitutional rights, represents not a single isolated, accidental, or peculiar event, but occurred in the regular procedures followed by the Baltimore City Police Department and constitutes a pattern or practice of illegal and unconstitutional conduct.

46.     Prior to the incident described in this complaint, the Special Litigation Section of the Civil Rights Division of the U.S. Department conducted an investigation of the Baltimore City Police Department. On August 10, 2016, the U.S. Department of Justice released the results of its investigation into the Baltimore City Police Department. The U.S. Department of Justice concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law." (Investigation of the Baltimore City Police

Department, U.S. Department of Justice Civil Rights Division, at 3) (last accessed 1/9/23),

*available at*:  https://www.justice.gov/crt/file/883296/download.

47.     The U.S. Department of Justice found that constitutional violations arose in part

from "critical deficiencies in BPD's systems to train, equip, supervise, and hold officers

accountable, and to build relationships with the broader Baltimore community":

> The constitutional violations described in our findings result in part from critical deficiencies in BPD's systems to train, equip, supervise, and hold officers accountable, and to build relationships with the broader Baltimore community. First, BPD fails to adequately supervise its officers. This lack of supervision manifests itself in multiple ways, including a failure to guide officer activity through effective policies and training; a failure to collect and analyze reliable data to supervise officer enforcement activities; and the lack of a meaningful early intervention system (EIS) to identify officers who may benefit from additional training or other guidance to ensure that they do not commit constitutional violations. Second, BPD lacks meaningful accountability systems to deter misconduct. BPD does not consistently classify, investigate, adjudicate, and document complaints of misconduct according to its own policies and accepted law enforcement standards. Indeed, we found that BPD personnel sometimes discourage complaints from being filed and frequently conduct little or no investigation—even of serious misconduct allegations. As a result, a culture resistant to accountability persists throughout much of BPD, and many officers are reluctant to report misconduct for fear that doing so is fruitless and may provoke retaliation. Third, BPD fails to have proper agreements in place to coordinate its activities with other agencies that are operating within its jurisdiction. Fourth, BPD fails to adequately support its officers through effective strategies for recruitment, retention, and staffing patterns, and does not provide them with appropriate technology and equipment. Fifth, BPD does not engage effectively with the community it polices. BPD's failure to use accepted community policing strategies and transparency mechanisms erodes the community trust that is central to productive law enforcement.
>
> These systemic deficiencies impair officer safety and effectiveness and lead directly to violations of the Constitution and federal law.

(Investigation of the Baltimore City Police Department, U.S. Department of Justice Civil Rights

Division, at 3) (last accessed 1/9/23), *available at*:

https://www.justice.gov/crt/file/883296/download.

*Prior to Defendant Lloyd's conduct in this case, the Baltimore City Police Department*

*had a policy, practice, and custom of sworn police officers using their office*
*police powers to engage in extortion for their own personal benefit*

48.     The Baltimore City Police Department had a policy, practice, and custom of police officers using their police powers using the power of coercion to extract benefits and engage extortion and outright thefts from members of the public.

49.     On May 11, 2011, Baltimore City Police Officers Jenkins and Gondo, while on duty, attempted to make a traffic stop of William Brehon. Brehon attempted to flea and the two police officers stole $1,800.00 from Brehon.[1] *See* "Anatomy of the GTTF Scandal," at A1.

50.     On January 24, 2014, Baltimore City Police Officers Taylor, Ward, Ivery, and Pinto, while on duty, executed a search warrant at the residence of Shawn Whiting. The police officers stole $3,000.00 from Mr. Whiting. *See* "Anatomy of the GTTF Scandal," at A1.

51.     On June 27, 2014, Baltimore City Police Officers Allers, Gondo, and Rayam, while on duty, executed a search warrant at a store and discovered $20,000.00 in cash. One of the police officers later returned and robbed the store with two other individuals. *See* "Anatomy of the GTTF Scandal," at A1-A2.

52.     On July 11, 2014, Baltimore City Police Officers Jenkins, Hendrix, and Friedman, while on duty, attempted to stop an individual in a car who attempted to flee. The officers stole $12,000.00 to $14,000.00. *See* "Anatomy of the GTTF Scandal," at A2.

---

[1] The incidents of extortion set forth in ¶¶ 43 to 66 are set forth in Steptoe & Johnson LLP's investigative report on the Gun Trace Task Force titled "Anatomy of the Gun Trace Task Force Scandal: Its Origins, Causes, and Consequences" (January 2022), *available at*: https://www.steptoe.com/a/web/219380/3ZF1Gi/gttf-report.pdf ("Anatomy of the GTTF Scandal"). In Appendix A to that report, the authors compiled a summary of "Crimes Committed by the Prosecuted Former BPD Officers," and Appendix A is incorporated in its entirety as if set forth herein.

53.     On October 8, 2014, Baltimore City Police Officers Allers, Gondo, and Rayam, while on duty, executed a search warrant at a store and discovered and stole $9,000.00. *See* "Anatomy of the GTTF Scandal," at A2.

54.     On November 5, 2014, Baltimore City Police Officers Hersl, Burns, Fassl, and Fillion, while on duty, stole $6,097.00 from Jimmie Griffin when the officers seized several thousand dollars from him. *See* "Anatomy of the GTTF Scandal," at A2.

55.     On April 3, 2015, Baltimore City Police Officers Gondo and Rayam stole $5,700 from a residence during the execution of a search warrant. *See* "Anatomy of the GTTF Scandal," at A2-A3.

56.     In early 2015, Baltimore City Police Officers Jenkins, Taylor, and Ward, while on duty, stole between $20,000 to $25,000 from two individuals who were engaged in a drug transaction at the Belvedere Apartments in Baltimore. *See* "Anatomy of the GTTF Scandal," at A3.

57.     On July 31, 2015, Baltimore City Police Officers Allers, Gondo, and Rayam, while on duty, stole $8,900.00 during the execution of a search warrant on a residence in Anne Arundel County, Maryland. *See* "Anatomy of the GTTF Scandal," at A3.

58.     On October 5, 2015, Baltimore City Police Officers Gondo and Rayam, with an acquaintance, burglarized Aaron Anderson's apartment, held an occupant at gun point, and stole illegal drugs, $12,000 to $14,000, a firearm, and a watch. *See* "Anatomy of the GTTF Scandal," at A3-A4.

59.     On November 27, 2015, Baltimore City Police Officer Hersl and Sergeant Burns arrested Herbert Tate. Officer Hersl stole $314 from Tate. *See* "Anatomy of the GTTF Scandal," at A4.

60.     On November 28, 2015, Baltimore City Police Officers Hersl and other police officers arrested Antonio Santiful. During the arrest, Officer Hersl stole $482 from Santiful. *See* "Anatomy of the GTTF Scandal," A4-A5.

61.     On February 4, 2016, Baltimore City Police Officers Jenkins, Hendrix and Ware arrested the driver of a taxicab. During the arrest, the officers stole between $1,500-$2,000 from taxicab driver. *See* "Anatomy of the GTTF Scandal," at A5.

62.     On February 10, 2016, Baltimore City Police Officers Allers, Gondo, and Rayam stole $8,300 from Paul Edwards during the execution of a search warrant in Baltimore City. *See* "Anatomy of the GTTF Scandal," at A5.

63.     On February 17, 2016, Baltimore City Police Officers Jenkins, Taylor and Ward arrested Raytawn Benjamin in Baltimore City. Officer Taylor stole between $200 to $500 from Benjamin during the arrest. *See* "Anatomy of the GTTF Scandal," at A6.

64.     On March 22, 2016, Baltimore City Police Officers Jenkins, Hendrix, Taylor, and Ward stole $6,500 from a vehicle with Oreese Stevenson, Demetrius Brown and one other individual. The officers arrested the three occupants of the vehicle. The officers used a key taken from Oreese Stevenson to access a residence on Heathfield Road in Baltimore. The officers stole some of the money discovered in a safe. *See* "Anatomy of the GTTF Scandal," at A7.

65.     On May 11, 2016, Baltimore City Police Officers Gondo, Rayam, and Hersl stopped a vehicle in Baltimore City. Officer Rayam stole $700 from Nicholas Deforge during the traffic stop. *See* "Anatomy of the GTTF Scandal," at A8.

66.     On May 28, 2016, Baltimore City Police Officers Allers, Gondo, Rayam, and Hersl arrested an individual, A.C. The officers went to his home in Anne Arundel County where the officers stole $700 from A.C. *See* "Anatomy of the GTTF Scandal," at A8.

67.     On June 24, 2016, Baltimore City Police Officers Jenkins, Gondo, Hendrix, and Ward searched Milton Mller's home in Baltimore. The officers stole $17,000.00 from the Miller's home. *See* "Anatomy of the GTTF Scandal," at A9.

68.     On July 8, 2016, Baltimore City Police Officers Gondo, Rayam, and Hersl stopped Ronald Hamilton and stole $3,400 from him. The officers drove to Hamilton's residence in Carroll County, Maryland and stole $20,000 from Hamilton. *See* "Anatomy of the GTTF Scandal," at A10.

69.     On August 8, 2016, Baltimore City Police Officers Jenkins, Hersl, Rayam and Clewell stole between $1,000 to $5,000 from Dennis Armstrong. *See* "Anatomy of the GTTF Scandal," at A11.

70.     On August 24, 2016, several Baltimore City Police Officers seized items from Aaron Fields, and Officers Hendrix and Ward stole $1,700 from Fields. *See* "Anatomy of the GTTF Scandal," at A12.

71.     Also, on August 24, 2016, Baltimore City Police Officer Rayam stole $1,500 from John Butler from his residence after he was detained during a vehicle stop. *See* "Anatomy of the GTTF Scandal," at A12.

### *Members of the Gun Trace Task Force were charged with crimes arising from, among other things, numerous acts of extorting members of the public*

72.     On February 23, 2017, a grand jury sitting in the United States District Court for the District of Maryland issued an indictment charging Baltimore City Police Officers Momodu Gondo, Evodio Hendrix, Daniel Hersl, Wayne Jenkins, Jemell Rayam, Marcus Taylor, and Maurice Ward with various crimes. *See United States v. Gondo et al.*, Case 1:17-cr-00106-GLR (D.Md 2017).

73.     In 2017, Ward pled guilty to a racketeering conspiracy arising from his conduct as a Baltimore City police officer.

74.     In 2017, Gondo pled guilty to a racketeering conspiracy and other crimes arising from his conduct as a Baltimore City police officer.

75.     In 2017, Rayam pled guilty to a racketeering conspiracy arising from his conduct as a Baltimore City police officer.

76.     In 2017, Hendrix pled guilty to a racketeering conspiracy arising from his conduct as a Baltimore City police officer.

77.     In 2018, Jenkins pled guilty to a racketeering conspiracy and other crimes arising from his conduct as a Baltimore City police officer.

78.     In 2018, a jury convicted Hersl of a racketeering conspiracy and other crimes arising from his conduct as a Baltimore City police officer.

79.     In 2018, a jury convicted Taylor of a racketeering conspiracy and other crimes arising from his conduct as a Baltimore City police officer.

80.     It is believed and alleged that, while these officers affiliated the Gun Trace Task Force were eventually criminally prosecuted, these criminal prosecutions were initiated by the federal government, and not Baltimore City, Maryland.

81.     It is further believed and alleged that this pattern or practice of constitutional violations committed by Baltimore City police officers and the impunity with which these officers were able to act was known by Defendant Lloyd and others. It is further believed and alleged that Defendant Lloyd was aware that there were no restrictions in place - despite the criminal acts perpetrated by other police officers in the years preceding these events – to alert any supervisor or prevent Lloyd from instructing his subordinates to show up at his office to

16

intimate Plaintiff and extort money from him. It is further believed and alleged that the culture in the Department and the power conferred by the Department on Defendant Lloyd did not lead Defendant Diaz, Taylor, or Larbi to object to his conduct towards Plaintiff or lead any of these officers to intervene and stop Defendant Lloyd while he was engaging in this criminal conduct or even report Defendant Lloyd after he committed these criminal acts against Plaintiff. It is further believed and alleged that Defendant Lloyd and others knew that the Department failed to implement meaningful measures to prevent the reoccurrence these type of civil rights violations by officers against members of the public.

**Count I**
**False Imprisonment**
**(Plaintiff v. Lloyd)**

82.　　Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

83.　　Defendant Lloyd deprived Plaintiff of his personal liberty without consent and without legal justification.

84.　　Defendant Lloyd took Plaintiff into his custody through the threat of force and transported him against his will to a branch of the Navy Federal Credit Union to extort money from Plaintiff.

85.　　Defendant Lloyd was armed and told Plaintiff that "[y]ou are going to give me my money back and I'm going to give you freedom."

86.　　Plaintiff was conscious of his confinement given that Defendant Lloyd made implicit and explicit threats and Defendant Lloyd transported Plaintiff to Navy Federal Credit Union to extort money from Plaintiff.

87.　　Defendant Lloyd intended to deprive Plaintiff of his personal liberty.

17

88.     Plaintiff suffered damages as a result of Defendants' unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, and punitive damages in an amount to be determined at trial, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

**COUNT II**
**False Arrest**
**(Plaintiff v. Lloyd)**

89.     Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

90.     Defendant Lloyd intentionally and unlawfully restrained and detained Plaintiff, which deprived Plaintiff of his freedom of movement.

91.     Defendant Lloyd intentionally and unlawfully restrained and detained Plaintiff and deprived him of his freedom of movement.

92.     Defendant Lloyd engaged in this intentional and unlawful conduct when Defendant Lloyd, under the threat of arrest, transported Plaintiff in Defendant Lloyd's police vehicle to the Naval Federal Credit Union to coerce Plaintiff to withdraw funds to avoid arrest and physical harm.

93.     Defendant Lloyd engaged in this conduct based on his intent to take Plaintiff into custody and subject Plaintiff to Defendant Lloyd's control.

94.     Although Defendant Lloyd used the power and prestige of his office as a sworn law enforcement officer, Defendant Lloyd lacked probable cause to arrest Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, and punitive damages in an amount to be determined at trial, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

**Count III**
**Violation of Article 24 of the Maryland Declaration of Rights**
**(Plaintiff v. Mayor and City Council of Baltimore and Lloyd)**

95.     Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

96.     At all times, Defendants acted within the scope of their employment as sworn officers with the Baltimore City Police Department.

97.     By the actions detailed above, Defendant Lloyd deprived Plaintiff of his rights under Article 24 of the Maryland Declaration of Rights, including, but not limited to, deprivation of liberty without due process of law, freedom from unlawful seizure, freedom from unlawful arrest, freedom from unlawful imprisonment, freedom from extortion by sworn law enforcement officers, freedom from law enforcement officers who use the power and prestige of their office to obtain money from private citizens, freedom from officers threatening to kill citizens if they do not give them money, and freedom from extortion by law enforcement officers.

98.     Defendants, at all times relevant hereto, acted under color of State law and in a manner that was not objectively reasonable, when they extorted Plaintiff, threatened him, kidnapped Plaintiff, engaged in misconduct in office, falsely arrested Plaintiff, falsely imprisoned Plaintiff, intimidated him, improperly deprived Plaintiff of his freedom of movement,

liberty, and bodily integrity causing Plaintiff to sustain damages, all with malicious intent and without proper justification or probable cause.

99.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in the form of emotional pain and suffering, extreme anxiety, emotional distress, economic loss, humiliation, intimidation, fear for his life and safety, and loss of enjoyment of life. Plaintiff's anxiety and fear caused Plaintiff to stop working in the Baltimore area for a period of time, which was the location of the vast majority of Plaintiff's work. Plaintiff continues to suffer from bouts of anxiety.

100.    Plaintiff's injuries were directly and proximately caused by the acts of the Defendants and their employees, agents and servants, both actual and apparent, without any negligence on the part of the Plaintiff contributing thereto.

101.    The Mayor and City Council of Baltimore is vicariously liable for all such actions taken by its police officers, which were undertaken deliberately and with actual malice.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, and punitive damages in an amount to be determined at trial, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

### Count IV
### Violation of Article 26 of the Maryland Declaration of Rights
### (Plaintiff v. Mayor and City Council of Baltimore and Lloyd)

102.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

103. At all times, Defendants acted within the scope of their employment as sworn officers with the Baltimore City Police Department.

104. Defendants did cause Plaintiff to be deprived of his rights under Article 26 of the Maryland Declaration of Rights to be free from unreasonable search and seizure, when they unlawfully extorted Plaintiff, threatened him, kidnapped Plaintiff, engaged in misconduct in office, falsely arrested Plaintiff, falsely imprisoned Plaintiff, intimidated him, improperly deprived Plaintiff of his freedom of movement, liberty, and bodily integrity.

105. Defendants, at all times relevant hereto, acted in a manner that was not objectively reasonable, when they improperly deprived Plaintiff of his freedom of movement, liberty, and bodily integrity when Defendants unlawfully extorted Plaintiff, threatened him, kidnapped Plaintiff, engaged in misconduct in office, falsely arrested Plaintiff, falsely imprisoned Plaintiff, intimidated him, improperly deprived Plaintiff of his freedom of movement, liberty, and bodily integrity causing Plaintiff to sustain damages, all with malicious intent and without proper justification or probable cause.

106. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in the form of emotional pain and suffering, extreme anxiety, emotional distress, economic loss, humiliation, intimidation, fear for his life and safety, and loss of enjoyment of life. Plaintiff's anxiety and fear caused Plaintiff to stop working in the Baltimore area for a period of time, which was the location of the vast majority of Plaintiff's work. Plaintiff continues to suffer from bouts of anxiety.

107. Plaintiff's injuries were directly and proximately caused by the acts of the Defendants and their employees, agents and servants, both actual and apparent, without any negligence on the part of the Plaintiff contributing thereto.

21

108. At all times relevant hereto, Defendants acted with ill-will and actual malice. Moreover, there was no legal justification for Defendants' actions.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, and punitive damages in an amount to be determined at trial, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

**Count V**
**Civil Conspiracy**
**(Plaintiff v. Mayor and City Council of Baltimore, Lloyd, Diaz, Larbi, and Taylor)**

109. Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

110. Defendant Lloyd, Defendant Diaz, Defendant Taylor, and Defendant Larbi entered into an agreement to extort Plaintiff, convert money from Plaintiff, kidnap Plaintiff, engage in misconduct in office, falsely arrest Plaintiff, falsely imprison Plaintiff, and violate Plaintiff's rights under Article 24 and 26 of the Maryland Declaration of Rights.

111. Defendants engaged in unlawful and tortious conduct when they extorted Plaintiff, converted money from Plaintiff, kidnapped Plaintiff, engaged in misconduct in office, falsely arrested Plaintiff, intentionally inflicted emotional distress, falsely imprisoned Plaintiff, and violated Plaintiff's rights under Article 24 and 26 of the Maryland Declaration of Rights.

112. Plaintiff suffered economic and non-economic damages as a result of this unlawful and tortious conduct.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus

interest, costs, and punitive damages in an amount to be determined at trial, but no less than one million dollars, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

**Count VI**
**Aiding and Abetting**
**(Plaintiff v. Diaz, Taylor, and Larbi)**

113.     Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

114.     Defendant Lloyd engaged in independent tortious conduct when he extorted Plaintiff, converted money from Plaintiff, kidnapped Plaintiff, engaged in misconduct in office, falsely arrested Plaintiff, falsely imprisoned Plaintiff, intentionally inflicted emotional distress, and violated Plaintiff's rights under Article 24 and 26 of the Maryland Declaration of Rights.

115.     Defendant Juan Diaz gave substantial assistance, aid, and encouragement to Defendant Lloyd's tortious and unlawful conduct by being physically present to intimidate Plaintiff, by being armed with a firearm, and by telling Plaintiff the patio was not worth $7000.00 for the purposes of communicating to Plaintiff that he needed to give Lloyd money back, and by telling Plaintiff "all you have to do is give his money back" to avoid being arrested and having his car towed.

116.     Defendant Todd Taylor gave substantial assistance, aid, and encouragement to Defendant Lloyd's tortious and unlawful conduct by being physically present to intimidate Plaintiff, by being armed with a firearm, by running Plaintiff's license plate through a law enforcement database without any legitimate law enforcement purpose, by running Plaintiff's driver's license through a law enforcement database without any legitimate law enforcement

23

purpose, and by searching for a location of the Navy Federal Credit Union so that Defendant Lloyd could transport Plaintiff to the bank to convert Plaintiff's money.

117.    Defendant Manuel Larbi gave substantial assistance, aid, and encouragement to Defendant Lloyd's tortious and unlawful conduct by being physically present to intimidate Plaintiff, by being armed with a firearm, and by running a search of Plaintiff on two law enforcement databases any legitimate law enforcement purpose.

118.    Defendants Diaz, Taylor, and Larbi had actual knowledge of Defendant Lloyd's wrongful conduct and their role in furthering this conduct.

119.    Plaintiff suffered damages as a result of this unlawful conduct, including non-economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, and punitive damages in an amount to be determined at trial, but no less than one million dollars, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

**Count VII**
**Intentional Infliction of Emotional Distress**
**(Plaintiff v. Lloyd)**

120.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

121.    Defendant conduct was intentional or reckless.

122.    Defendant conduct was extreme and outrageous.

123.    There is causal connection between the wrongful conduct and the Plaintiff's emotional distress.

124. That the conduct caused emotional distress of a severe nature. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in the form of emotional pain and suffering, extreme anxiety, emotional distress, economic loss, humiliation, intimidation, fear for his life and safety, and loss of enjoyment of life. Plaintiff's anxiety and fear caused Plaintiff to stop working in the Baltimore area for a period of time, which was the location of the vast majority of Plaintiff's work. Plaintiff continues to suffer from bouts of anxiety.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, and punitive damages in an amount to be determined at trial, but no less than one million dollars, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

**Count VIII**
**Conversion**
**(Plaintiff v. Defendant Lloyd)**

125. Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

126. Defendant Lloyd converted Plaintiff's property when Defendant Lloyd drove Plaintiff to a bank under the threat of arrest and criminal charges and forced him to withdraw money to give to Defendant Lloyd.

127. Defendant Lloyd acted with the intention to take the money because he drove Plaintiff to a bank for purposes of him forcing Plaintiff to withdraw the money for Defendant Lloyd.

128. Defendant Lloyd acted without permission or justification when he used the powers of his position as a sworn law enforcement officer to compel Plaintiff to give him money.

129. Defendant Lloyd exercised dominion over the property when he extorted money from Plaintiff.

130. Plaintiff suffered damages as a result of Defendant Lloyd's conversion of Plaintiff's money.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, and punitive damages in an amount to be determined at trial, but no less than one million dollars, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

### Count IX
### Violation of 42 U.S.C. § 1983
### (Plaintiff v. Defendant Lloyd, in his Individual Capacity)

131. Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

132. This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the plaintiffs by the Fourth and Fourteenth Amendment to the United States Constitution.

133. Defendant Lloyd, at all relevant times to this complaint, worked as a law enforcement officer with the Baltimore City Police Department.

134. Based on the allegations above, Defendant Lloyd, acting in his individual capacity, acted under color of State law and deprived Plaintiff of his clearly established rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution, said rights including, but not limited to the right to be free from law enforcement extortion; the right to be free from unreasonable seizures; the right to be free from police kidnapping; freedom to be

26

secure in one's person from unreasonable seizures; freedom from the deprivation of liberty without due process of the law; and freedom from the abuse of power by the police.

135.    Plaintiff had a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, to bodily integrity and personal security, and his ability to be free from unlawful and unwelcome seizure by the police.

136.    Defendant Lloyd deprived Plaintiff of these liberties and rights when he extorted the Plaintiff and engaged in the conduct identified in the complaint.

137.    As a proximate result of the aforesaid acts, Defendant Lloyd deprived the Plaintiff of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000, plus interest, costs, attorney's fees, and punitive damages in an amount to be determined at trial, plus interest and costs and such further relief as this Honorable Court deems just and proper under the circumstances.

## Count X
### Violation of 42 U.S.C. § 1983
**(Plaintiff v. Defendant Mayor and City Council of Baltimore and Lloyd in his Official Capacity)**

138.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

139.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the plaintiffs by the Fourth and Fourteenth Amendment to the United States Constitution.

140. Defendant Lloyd's conduct, including the deprivation of constitutional rights and the use of extortion, represents not a single isolated, accidental, or peculiar event, but occurred in the regular procedures followed by Baltimore City police officers and constitutes a pattern or practice of such conduct.

141. Prior to the date of this incident, Defendant Mayor and City Council of Baltimore permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal theft and extortion by police officers from members of the public.

142. For example, it is believed and alleged that, despite Det. Juan Diaz' aid and encouragement in the extortion of Plaintiff, it is believed that alleged that the Baltimore City Police Department paid Detective Diaz back pay for the time that he was temporarily suspended.

143. Moreover, Defendant Mayor and City Council of Baltimore has failed to properly train, prosecute, supervise, and discipline its police officers, including, but not limited to, Defendant Lloyd, in the proper constitutional use of his police powers.

144. Defendant Mayor and City Council of Baltimore also failed to properly train and supervise its police officers, including, but not limited to, Defendant Lloyd.

145. The failure to properly train, prosecute, supervise, and discipline its officers demonstrates a gross disregard for the constitutional rights of the public and the Plaintiff, and was a proximate cause of the Plaintiff's injuries.

146. In addition, the Mayor and City Council of Baltimore caused its police officers, and employees of the Baltimore City Police Department, to believe that their unlawful use of the prestige of their office would not be aggressively, honestly, and properly investigated.

147.    As a proximate result of the aforesaid acts, omissions, systemic flaws, policies, and customs of the Mayor and City Council of Baltimore, Defendant Lloyd deprived the Plaintiff of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff demands the following relief: (a) Judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000), plus interest; (b) The costs of this action; (c) In addition to any and all monetary damages available, Plaintiffs seek equitable temporary, preliminary and permanent injunctive relief to, inter alia, compel the City to (i) institute a meaningful, transparent and timely public process to review citizen complaints of theft or extortion; (ii) implement additional supervision and monitoring of police officers at greater risk of abusing the status of their office; and (iii) institute training for police officers on permissible conduct; (iv) provide additional training on use of law enforcement databases and require police officers to document each search and the purpose of each search to ensure officers are not misusing these confidential databases for personal purposes or personal gain; (d) attorney's fees; (e) punitive damages in an amount to  be determined at trial; and (f) such further relief as this Honorable Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues so triable.

Timothy F. Maloney

29

Respectfully submitted,

By:     Timothy F. Maloney, AIS No. 8606010245
tmaloney@jgllaw.com
Matthew M. Bryant, AIS No. 0712110104
mbryant@jgllaw.com
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
Phone: (301) 220-2200

Bobby Zirkin, Esq.
Zirkin and Schmerling Law Office
1852 Reisterstown Road, Suite #203
Pikesville, MD 21208
Phone: (410) 753-4611

*Counsel for Plaintiff*

30

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2023, a copy of the foregoing

was sent via first class mail to:

Ebony Thompson, Esq.
Acting City Solicitor
City Hall - Room 250
100 N. Holliday Street
Baltimore, Maryland 21202
*Counsel for Mayor and City Council of Baltimore*

Justin S. Conroy
Chief Legal Counsel
Police Legal Affairs Practice Group
Baltimore City Department of Law
100 N. Holliday Street, Suite 101
Baltimore, MD 21202

James Abraham Lloyd
2021 Emmanuel CT
Gwynn Oak, MD 21207

Juan Diaz
5384 Eliots Oak Road
Columbia, MD 21044

Troy Taylor
6 Travis Court
Rosedale, MD 21237

Manuel Larbi
220 Staysail Drive
Joppa, MD 21085

Matthew M. Bryant