**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| **LUIS ALFONSO TORRES HERNANDEZ** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No.: 1:23-cv-01016-JRR** |
| **JAMES ABRAHAM LLOYD, et al.,** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Ebony M. Thompson
Acting Baltimore City Solicitor

Respectfully submitted,

_/s/_

James A. H. Corley (Fed. Bar No. 30016)
Chief Solicitor
Gregory T. Fox (Fed. Bar No. 21472)
Christine E. White (Fed. Bar No. 19185)
Assistant Solicitors
Baltimore City Department of Law
Office of Legal Affairs
City Hall, Room 101
100 N. Holliday Street
Baltimore, MD 21202
410-274-8614 / 410-396-2126 (facsimile)
Jim.corley@baltimorepolice.org
_Counsel for Defendant BPD_

# TABLE OF CONTENTS

INTRODUCTION........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

STANDARD OF REVIEW ........................................................................................... 5

A.  Federal Rule of Civil Procedure 12(b)(1) ........................................................ 5

B.  Federal Rule of Civil Procedure 12(b)(6) ........................................................ 6

ARGUMENT ................................................................................................................. 8

I.    SOVEREIGN IMMUNITY SHIELDS BPD FROM LIABILITY ON STATE AND COMMON LAW CLAIMS. ...................................................................................... 9

II.   PLAINTIFF FAILS TO STATE A CONSPIRACY CLAIM AGAINST BPD. ........... 11

A.  There is no separate tort for civil conspiracy under Maryland law ............................ 11

B.  Plaintiff's Civil Conspiracy Claim is Barred by the Intra-Corporate Conspiracy Doctrine ............................................................................................... 11

C.  Plaintiff has not pled any facts that would implicate the BPD in a civil conspiracy.  13

III.  PLAINTIFF FAILS TO STATE A *MONELL* CLAIM AGAINST THE BPD ............... 14

A.  Plaintiff Fails to Plausibly Allege that a BPD Official with Final Policymaking Authority Established an Official Policy. ..................................................... 15

B.  The Second Amended Complaint does not establish a "pattern or practice" of similar unconstitutional conduct. ............................................................... 15

1.   2016 Department of Justice Report. ...................................................... 16

2.   2022 Steptoe Report regarding the Gun Trace Task Force ......................... 18

C.  Plaintiff failed to state a claim for failure to train, supervise or discipline. ............... 19

D.  Plaintiff fails to establish BPD was deliberately indifferent toward Plaintiff's rights. ............................................................................................... 22

E.  Plaintiff failed to sufficiently plead causation as required for a *Monell* claim ........... 25

IV.  ADOPTION AND INCORPORATION. .................................................................... 26

CONCLUSION ........................................................................................................... 26

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
#### Northern Division

| | | |
|---|---|---|
| **LUIS ALFONSO TORRES HERNANDEZ** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No.: 1:23-cv-01016-JRR** |
| **JAMES ABRAHAM LLOYD, et al.,** | * | |
| **Defendants.** | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant, Baltimore Police Department ("BPD"), by its undersigned attorneys and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint.

### INTRODUCTION

On or about March 3, 2023, Plaintiff Luis Alfonso Torres Hernandez ("Plaintiff" or "Hernandez") filed his Complaint, in the Circuit Court for Baltimore City, against four (4) former and current BPD Officers, James Lloyd ("Lloyd"), Juan Diaz ("Diaz"), Troy Taylor ("Taylor"), and Manuel Larbi ("Larbi"), as well as "Baltimore City, Maryland" ("City") *See* ECF No. 1. On March 16, 2023, the City was served with the Summons and Complaint. ECF No. 1-2. Officers Lloyd, Diaz, Larbi and Taylor (collectively the "Individual Defendants") were each served between March 15-20, 2023. ECF Nos. 1-3 to 1-6. On or about March 31, 2023, Plaintiff filed an Amended Complaint, updating the proper legal entity name of the City from "Baltimore City, Maryland" to the "Mayor and City Council of Baltimore." ECF No. 1-7. On April 17, 2023, Defendant City removed this matter to Federal Court pursuant to 28 U.S.C. § 1441. ECF No. 1.

Four days later, on April 21, 2023, all Parties filed a Joint Request to Schedule an Expedited Settlement Conference and a Joint Motion to Stay the Litigation Pending Conclusion of the Settlement Conference.  ECF Nos. 14, 15.  The Court granted both the same day.  ECF Nos. 16, 17.  On June 16, 2023, a Settlement Conference was held before Magistrate Judge Maddox.  *See* ECF No. 26, ¶ 4; *see also* ECF No. 20.  The matter was not resolved at the conference.  *Id.*

On June 23, 2023, the Parties filed a Joint Status Report and Motion for Briefing Schedule. ECF No. 26.  The Parties noted that Plaintiff intended to file a Second Amended Complaint, with Defendants' consent, and proposed a timeline for responses and oppositions.  *Id.* at ¶¶ 6-8; *see also* ECF No. 27.   The Court Granted the Joint Status Report and Motion on June 26, 2023.   ECF No. 28. Plaintiff's Second Amended Complaint ("2AC") was docketed the same day.  ECF No. 29. Plaintiff's 2AC added one new Defendant, BPD, and two additional counts.  *Id.*  On June 28, 2023, immediately after the Court issued a summons for the new defendant, BPD provided Plaintiff with a waiver of service.  *See* ECF No. 32; *see also* Exhibit 1 (email to Plaintiff attaching waiver of service).

Plaintiff's 2AC alleges several state torts alleged against, in whole or in part, all six (6) defendants.  Plaintiff's 2AC names six (6) total claims against BPD, including five (5) state or common law counts: Violations of Articles 24[1] and 26[2] of the Md. Decl. of Rights (Counts III and IV); Civil Conspiracy (Count V); and separate claims for Failure to Supervise under Articles 24

---

[1] Article 24 of the Maryland Declaration of Rights provides:
> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or by the Law of the Land.

[2] Article 26 of the Maryland Declaration of Rights provides:
> That all warrants, without oath and affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

and 26 of the Md. Decl. of Rights (Counts XI and XII).  Plaintiff's 2AC also contains a single federal *Monell*[3] claim against the BPD, for violation of 42 U.S.C. § 1983 (Count X).  BPD moves to dismiss Plaintiff's 2AC with prejudice and without leave to amend because (1) BPD is immune from Plaintiff's state and common law claims due to state sovereign immunity, and (2) Plaintiff's 2AC fails to state a claim upon which relief can be granted.[4]

## FACTUAL BACKGROUND[5]

In or around May 2020, Lloyd hired Plaintiff to construct a patio at Lloyd's private residence in Baltimore County, Maryland, which was completed by June 12, 2020.  ECF No. 11, ¶¶ 10-13.  On or around June 18, 2020, Lloyd contacted Plaintiff regarding issues with the patio.  *Id*., ¶ 14.  Plaintiff returned to Lloyd's residence, where he met Lloyd's fiancé and Diaz.  *Id*., ¶ 15.  After inspection, Plaintiff agreed to repair the issue raised by Lloyd.  *Id*.  During that encounter, Diaz commented to Plaintiff that the work done was not worth the paid price.  *Id*.  Despite the prior issue and this comment by Diaz, Lloyd's fiancé requested additional work be performed to enlarge the patio, and Plaintiff agreed to do the additional work at less than full price.  *Id*.

On June 25, 2020, Plaintiff send a work crew to Lloyd's residence to perform the new work, and he arrived a short time after his workers.  *Id*., ¶ 19.  Plaintiff claims that when he arrived, in addition to his workers and Lloyd, the other three Individual Defendants, Diaz, Taylor, and

---

[3] A "§ 1983 *Monell* claim" refers to the well-established Supreme Court precedent authorizing civil rights lawsuits under § 1983 against municipalities, where an official policy or custom of the municipality causes a constitutional injury.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[4] Each of the six (6) individual counts asserted against the BPD in Plaintiff's Second Amended Complaint are also asserted against Defendant City.  Due to the unique arguments to be made by the BPD and City, each Defendant is filing its own separate Motion to Dismiss.

[5] Defendants' factual summary includes the recitation of facts as pled in the Second Amended Complaint. Defendant's recitation of Plaintiff's facts should not be construed as a concession or admission of any of the facts contained therein.

Larbi, were also present. *Id*., ¶¶ 17, 19. Plaintiff specifically alleges that Diaz, Taylor, and Larbi were all on duty and were present "at the direction of defendant Lloyd." *Id*., ¶ 17. Because they were on duty, their badges and firearms were visible on their persons. *See id*., ¶¶ 28, 29. Plaintiff alleges that while at Lloyd's residence, Lloyd showed him his firearm to instill fear, advised Plaintiff that his license was suspended, and threatened to arrest him if he did not return all or part of the money that Lloyd had paid Plaintiff for the previous patio work. *Id*., ¶¶ 23, 27.

Plaintiff alleges that while he was speaking with Lloyd in the back yard, Diaz approached him and stated "all you have to do is give his money back." *Id*., ¶ 28. Lloyd then called Larbi and Taylor, who had been waiting in their van in the front of the residence, and asked them to take Plaintiff downtown because he was driving on a suspended license. *Id*., ¶ 29. Plaintiff alleges only that Larbi and Taylor approached him, causing him to fear for his safety. *Id*. Lloyd then told Plaintiff that the dispute could be resolved if Plaintiff returned the money paid for the prior patio work, and asked Plaintiff what bank he used. *Id*., ¶ 30. When Plaintiff identified his bank, Taylor searched for the nearest location. *Id*., ¶ 31. Lloyd then transported Plaintiff to the bank, informing Plaintiff that if he returned the money Lloyd would let him go. *Id.*, ¶¶ 36-38. Upon arrival at the bank Plaintiff withdrew three thousand five hundred dollars ($3,500.00) via cashier's check, which Lloyd later deposited. *Id*., ¶¶ 39-40. Lloyd then drove Plaintiff back to his (Lloyd's) residence, and subsequently advised Plaintiff that he would not be arrested for driving on a suspended license and ordered him to leave the location. *Id*., ¶ 37. Later that day, Plaintiff reported the incident to Baltimore County police, after which Lloyd was indicted by a Baltimore County Grand Jury on charges of misconduct in office, kidnapping, and extortion. See *Id*, ¶¶ 39, 42. Lloyd subsequently pleaded guilty to one count of misconduct in office, for which he was sentenced to three years of imprisonment with all but one year suspended. *Id*., ¶¶ 43-44.

4

The most relevant and important fact from Plaintiff's 2AC, for the purposes of BPD's instant Motion, is that Plaintiff has not alleged any conduct that led to or caused his injuries, whether by action or omission, on the part of anyone other than the four individually named Defendants Lloyd, Diaz, Taylor, and Larbi.

## STANDARD OF REVIEW

**A.     Federal Rule of Civil Procedure 12(b)(1)**

"Sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (internal citation omitted), *cert. denied*, 139 U.S. 417 (2018); *see also, e.g.*, *Phillips v. Md. Bd. of Law Examiners*, ADC-19-2427, 2021 WL 633378, at *4 (D. Md. Feb. 18, 2021); *Davis v. Pavlik*, GLH-20-547, 2020 WL 7489011, at *2 (D. Md. Dec. 21, 2020).

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). However, a court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *B.F. Perkins*, 166 F.3d at 647 (citation omitted). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009); *accord Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018). Here, BPD challenges the Court's subject matter jurisdiction as to Plaintiff's state and common law

claims against BPD, asserting that the doctrine of sovereign immunity forecloses those claims. In such a case, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7; *see Kerns*, 585 F.3d at 192 (noting that in a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction").

## B.      Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint.  *See, e.g.*, *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible."  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). Although courts must generally accept the allegations of a complaint as true, that principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, Courts "are not bound to accept as true a legal

conclusion couched as a factual allegation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."*Id.*

In analyzing the sufficiency of a pleading, the Fourth Circuit has determined that "we need not accept the legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)) (internal quotation marks and citations omitted); *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief . . . ." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (quotations omitted). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). Once a pleading is stripped of its allegations that are not entitled to truth, the court then determines if the remaining factual allegations state a plausible claim for relief. *See Iqbal*, 556 U.S. at 677-83; *Twombly*, 550 U.S. at 555-70; *Glassman*, 628 F.3d at 145-150; *Giacomelli*, 588 F.3d at 194-97.

Additionally, a plaintiff fails to state a claim where the allegations on the face of the complaint show an affirmative defense would bar recovery. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007) (citing Fed. R. Civ. P. 8(c)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## ARGUMENT

As unsettling as the allegations in Plaintiff's 2AC appear, the Court must review Plaintiff's allegations objectively, with "cold neutrality."[6] This case is about a private disagreement between two adult males, regarding a patio that the Plaintiff was hired to build for Lloyd. That Lloyd was on-duty for BPD at the time of the relevant events does not automatically impute liability on to BPD or convert this private dispute into a civil rights matter. Plaintiff alleges conduct by the Individual Defendants only, not by any other individual. Although Plaintiff alleges that Lloyd directed his subordinates, Diaz, Taylor, and Larbi, to come to his house June 25, 2023, Plaintiff does not allege any facts to suggest that Diaz, Taylor, and Larbi knew why Lloyd wanted them there, let alone that they arrived with the intent to violate Plaintiff's rights or to assist Lloyd in doing so. *See* ECF No. 29, ¶¶ 17-41.

Plaintiff's allegations, specifically those against the BPD, are nothing more than a flagrant attempt to frame this private disagreement as a much more sinister conspiracy to violate his civil rights and to entangle an entity with deeper financial pockets. Plaintiff's state law claims against

---

[6] *See People ex rel. Union Bag & Paper Corp. v. Gilbert*, 256 N.Y.S. 442, 444 (Sup. Ct. 1932), *aff'd sub nom. People ex rel. Union Bag & Paper Power Corp. v. Gilbert*, 260 N.Y.S. 939 (App. Div. 1932) ("Every litigant is entitled to nothing less than the cold neutrality of an impartial judge who must possess the disinterestedness of a total stranger to the interests of the parties involved in the litigation . . . .");

BPD must be dismissed with prejudice and without leave to amend, based on the mountain of case-law holding that BPD is immune from state constitutional and common law claims under the doctrine of state sovereign immunity.  Further, Plaintiff fails to allege sufficient, if any, facts to support a *Monell* claim against BPD.  Accordingly, the claims in Plaintiff's 2AC, as to Defendant BPD, must be dismissed with prejudice and without leave to amend.

## I.   SOVEREIGN IMMUNITY SHIELDS BPD FROM LIABILITY ON STATE AND COMMON LAW CLAIMS.[7]

State sovereign immunity protects BPD from liability on all state and common law claims. To the extent Plaintiff's state or common law claims in Counts III, IV, XI, and XII are asserted against BPD, they fail as a matter of law and must be dismissed.  At the time of the events in question, [8] BPD "[e]xist[ed] as an agency of the State, and therefore enjoy[ed] the common law sovereign immunity from tort liability of a State agency." *Cherkes*, 140 Md. App. at 313 (2001). Sovereign immunity protects both the State and its agencies against common law tort liability, unless the immunity has been waived. *See Maryland-Nat'l Capital Park & Planning Comm'n. v. Kranz*, 308 Md. 618, 622 (1987); *see also Rockwell v. Mayor & City Council of Baltimore*, 2014 WL 949859, at \*12 (D. Md. Mar. 11, 2014) ("Maryland courts have afforded the Baltimore City Police Department with state common law sovereign immunity for tort claims for damages").

The only avenue to waive immunity is via legislation, which the Legislature has not done. *See Fish v. Mayor & City Council of Baltimore*, No. CV CCB-17-1438, 2018 WL 348111, at \*3

---

[7] BPD is not asserting immunity, under the Eleventh Amendment to the U.S. Constitution, as to any federal claims asserted by Plaintiff.  BPD is asserting state sovereign immunity only as to the state and common law causes of action asserted in Plaintiff's 2AC.

[8] During the November 2022 elections, Baltimore City voters voted to make the BPD a City agency again, for the first time in 160 years, to begin on January 1, 2023. *See* CBS News Baltimore, "*Baltimore City Council adopts resolution to speed up process of securing control of police department*," February 28, 2023 (https://www.cbsnews.com/baltimore/news/baltimore-city-council-adopts-resolution-to-speed-up-process-to-secure-control-of-police-department/) (last accessed July 31, 2023).  However, all necessary steps, including required legislative efforts to complete the transition back to local control, have not yet been completed. *Id.*

(D. Md. Jan. 10, 2018) ("BPD contends it enjoys sovereign immunity. I agree with BPD as to the state law claims and will dismiss those with prejudice.").  Accordingly, BPD is protected from direct and vicarious liability both on ordinary tort claims and state constitutional claims in the present matter. *Cherkes*, 140 Md. App. at 326.  Indeed, the Court has consistently held that BPD's sovereign immunity bars the very type of claims Plaintiff asserts here. *See Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *9 (D. Md. Apr. 20, 2021) (dismissing all state and common law causes of action against BPD, including Article 24 and 26 claims, on the grounds that they are barred by BPD's sovereign immunity); *see also Corbitt v. Baltimore Police Dep't, et al.*, No. CV RDB-20-3431, 2021 WL 3510579, at *7 (D. Md. Aug. 10, 2021) ("Accordingly, on numerous occasions, this Court has held that 'the Baltimore Police Department enjoys State sovereign immunity from actions for damages based on state common law torts or state constitutional torts.") (citations and quotations omitted); *L.L. ex rel. Lemus v. Baltimore City Police Dept.*, 2013 WL 1833249, at *3 (D. Md. Apr. 30, 2013) ("Maryland courts have exhaustively examined the Department's sovereign immunity and concluded that it is not subject to suit—directly or under respondeat superior—for any state torts"); *Brown v. Tshamba*, 2011 WL 2935037, at *7 (D. Md. July 18, 2011) (granting BPD Motion to Dismiss respect to Plaintiffs' state constitutional claims under Articles 24 and 26); *Rockwell*, 2014 WL 949859, at *12 (dismissing Article 24 and 26 claims against BPD due to common law state sovereign immunity).

Consequently, BPD's common law state sovereign immunity bars any and all state or common law claims Plaintiff asserts against BPD.  As such, Counts III, IV, V, XI, and XII fail as a matter of law and must be dismissed with prejudice.

## II.     PLAINTIFF FAILS TO STATE A CONSPIRACY CLAIM AGAINST BPD.

Plaintiff alleges that the four Individual Defendants, "acting as agents of the Baltimore Police Department and the Mayor and City Council of Baltimore" engaged in a conspiracy to "violate Plaintiff's rights under Article 24 and 26 of the Maryland Declaration of Right."  ECF No. 29, ¶¶ 117-120 (Count V).[9] BPD's state sovereign immunity also protects it against Plaintiff's claim for Civil Conspiracy in Count V.  *See supra* at I.    However, even if BPD was not immune, Plaintiff has failed to state a claim for civil conspiracy for which relief can be granted against BPD.

### A.     There is no separate tort for civil conspiracy under Maryland law.

"Under Maryland law, there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established." *Rockwell*, 2014 WL 949859, at \*10 (citing *McDaniel v. Maryland*, 2010 WL 3260007, at \*11 (D.Md. Aug.18, 2010); *see also Lee v. Queen Anne's County Office of the Sheriff*, 2014 WL 476233, at \*16 (D. Md. Feb 5, 2014).  Accordingly, Plaintiff's 2AC cannot state a valid cause of action for civil conspiracy against the BPD.

### B.     Plaintiff's Civil Conspiracy Claim is Barred by the Intra-Corporate Conspiracy Doctrine.

Plaintiff has erroneously asserted that the City is the employer of BPD Officers.  ECF No. 29 at ¶¶ 5-6.  As detailed in the City's concurrently filed Motion to Dismiss, the City has no control over BPD or its officers and thus should be dismissed from this matter.  *See* ECF No. 35-1, at 8-10; *see also Nicholson*, 2021 WL 1541667, at \*10 (dismissing all claims against the City, including

---

[9] Plaintiff specifically asserts his civil conspiracy claim as a state claim for violating his rights under the Maryland Declaration of Rights.  ECF No. 29 at ¶ 118.  However, even if Plaintiff had asserted his claim under federal law under 42 U.S.C. § 1983, § 1985, he has still failed to allege the necessary elements of a conspiracy claim, including, but not limited to, a failure to allege a class-based, invidiously discriminatory animus.  *See Borkowski v. Baltimore Cnty., Maryland*, 414 F. Supp. 3d 788, 815 (D. Md. 2019) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

state constitutional claims under Articles 24 and 26, because it is not liable for the conduct of BPD

officers or employees). Once the City is dismissed from this action, the remaining parties would

be the BPD and the BPD Officers identified as the four Individual Defendants.

It is fundamental that "you must have two persons or entities to have a conspiracy."

*Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). The intra-

corporate conspiracy doctrine holds that "'[a] corporation cannot conspire with itself any more

than a private individual can, and it is the general rule that the acts of the agent are the acts of

the corporation." *Buschi,* 775 F.2d at 1251 (quoting *Nelson*, 200 F.2d at 914). Because BPD and

its officers constitute the "same legal entity," they cannot conspire with one another as a matter of

law. *See Rich v. Hersl,* No. CV ADC-20-488, 2022 WL 672751, at *5 (D. Md. Mar. 7, 2022) ("the

[intracorporate conspiracy] doctrine extends to government entities and 'officials of a public body

who act within the scope of their employment.'"") (citing *Buschi*, 775 F.2d at 1251-52). Therefore,

if BPD and its officers constitute the same legal entity, if the BPD Officers were employed by the

City, then the City, the BPD, and the BPD Officers would all constitute a single legal entity that

cannot conspire within itself. *See id.*

However, "the doctrine is inapplicable where the employees' actions in furtherance of the

conspiracy were unauthorized." *Buschi*, 775 F.2d at 1252-53 (citing *Hodgin v. Jefferson*, 447 F.

Supp. 804, 807 (D. Md. 1978)). Therefore, "the question is whether [the] individual BPD

Defendants' actions were authorized by BPD." *Rich*, 2022 WL 672751, at *5. Plaintiff, in his

2AC, repeatedly asserts that each of the Individual Defendants was "at all relevant times, employed

… with the Baltimore City Police Department Homicide Unit, and act[ing] in [their] official

capacity and within the scope of [their] employment." ECF No. 29, ¶¶ 7-10, 103. Further, Plaintiff

asserts that the individual Defendants, "at all times relevant hereto, acted under color of State law."

12

*Id.* ¶ 105. "Such allegations amount to a claim that the Individual Defendants '[were] acting as [agents] of the Baltimore City Police Department,' and the intracorporate conspiracy doctrine applies." *Rich*, 2022 WL 672751, at *5 (citing *Kangalee v. Baltimore City Police Dep't*, 2012 WL 5457231, at *7 (D.Md. Nov. 7, 2012) (explaining that an officer who "at all times relevant to this matter, ... acted under color of law," acted "as an agent of the Baltimore City Police Department," and the intracorporate conspiracy doctrine applied)). This Court has repeatedly applied the doctrine to dismiss conspiracy claims filed against BPD officers. *See Kangalee v. Baltimore Police Dep't*, No. RDB-12-01566, 2012 WL 5457231, at *7-8 (D. Md. Nov. 7, 2012); *Williams v. Baltimore City*, Case No. WMN-14-1125, 2014 WL 5707563, at *6-7 (D. Md. Nov. 4, 2014); *Burgess v. Baltimore Police Dep't*, No. RDB-15-0834, 2016 WL 795975, at *10-11 (D. Md. Mar. 1, 2016); *Bumgardner v. Taylor*, No. GLR-18-1438, 2019 WL 4115414, at *7-8 (D. Md. Aug. 29, 2019).

### C.   Plaintiff has not pled any facts that would implicate the BPD in a civil conspiracy.

Plaintiff's 2AC contains factual assertions involving only the four (4) Individual Defendants. ECF No. 29, ¶¶ 11-88. There are no assertions regarding the actions of any other individual, employed by BPD or any other entity. "A claim of civil conspiracy requires proof of three elements: (1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damage resulting to the plaintiff." *Bellezza v. Greater Havre De Grace Yacht Club, Inc.*, 2015 WL 6394418, at *9 (Md. Ct. Spec. App. Oct. 22, 2015) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007)).

Plaintiff fails to identify a single actor, aside from the four Individual Defendants, who engaged in any conduct related to the events described in the 2AC. Because Plaintiff failed to

identify any unlawful or tortious action, taken by the BPD or its employees (aside from the named Individual Defendants), that led to his alleged injuries, Plaintiff's claim for civil conspiracy (Count V) must be dismissed, with prejudice and without leave to amend.

## III.    PLAINTIFF FAILS TO STATE A *MONELL* CLAIM AGAINST THE BPD.

Plaintiff's *Monell* claims are deficient, as he fails to state a claim upon which relief may be granted.  Section 1983 provides a remedy against "any person" who, under color of law, deprives another of rights protected by the United States Constitution. 42 U.S.C. § 1983. A municipality is liable under § 1983 when "the unconstitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell,* 436 U.S. at 694).  However, a municipality may be found liable only if two elements are met: (1) an unconstitutional policy or practice must exist, and (2) the municipality must have *caused* the constitutional violation. *See Monell*, 436 U.S. at 690; *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

To satisfy the first element, a party may show the existence of an unconstitutional "policy" or "custom" in one of four ways:

(1)    A formal policy, regulation or ordinance;
(2)    An express decision of an official with "final policymaking authority";
(3)    The municipality's failure to train its employees, such that the municipality was "deliberately indifferent" to the constitutional rights of its citizens; or
(4)    A "pattern and practice" of similar unconstitutional conduct by municipal employees, that is so "persistent and widespread" as to become a "custom or usage" of the municipality.

*See Connick*, 563 U.S. at 60-61; *Lytle*, 326 F.3d at 471; *Carter*, 164 F.3d at 218; *Spell*, 824 F.2d at 1391; *Milligan*, 743 F.2d at 229.

The second element of a *Monell* claim (causation) is a high hurdle because a complaining party must prove the unconstitutional policy or custom was the "moving force" behind the violation of his or her rights. *See Connick*, 563 U.S. at 60-61; *see also Brown*, 520 U.S. at 404. Liability exists only "where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added) (citation omitted).

### A. Plaintiff Fails to Plausibly Allege that a BPD Official with Final Policymaking Authority Established an Official Policy.

Plaintiff fails to sufficiently allege that acts of BPD officials created a policy encouraging the violation of constitutional rights. In order to establish such a claim, a plaintiff must allege that individuals with "final policymaking authority" caused the violation of his or her constitutional rights. *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000). Such acts must be "affirmative decisions of individual policymaking officials." *Carter*, 164 F.3d at 218. Plaintiff has not done so here. Instead, the 2AC is entirely devoid of allegations regarding (1) the identity of an express policy or regulation; (2) the identity of the final policymaking official, and (3) any tangible, affirmative decision on the part of such an official which led to the deprivation of constitutional rights. As such, *Monell* liability premised upon the acts of policymaking officials fails. The 2AC does not allege a plausible claim for relief under this theory.

### B. The Second Amended Complaint does not establish a "pattern or practice" of similar unconstitutional conduct.

To plausibly allege *Monell* liability by condonation or pattern or practice, a plaintiff must state facts showing "a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Johnson*, 452 F. Supp. 3d

at 310 (internal alterations and quotations omitted) (quoting *Owens*, 767 F.3d at 402).  Plaintiff's 2AC fails to state sufficient facts to establish a pattern or practice of unlawful conduct.

In order to determine whether a pattern of similar misconduct existed prior to this incident, it is important to properly frame the specific misconduct alleged in Plaintiff's 2AC.  Plaintiff's allegations, distilled to their most basic level, assert that a police sergeant made an appointment to meet Plaintiff, a contractor he had previously hired and paid to build a deck at the sergeant's private home and, at that meeting, the sergeant demanded that the Plaintiff refund his money or be arrested.

Aside from Plaintiff's conclusory allegation that this incident was indicative of BPD Officers' history of prior unconstitutional conduct, he does not provide a single example of another interaction between a BPD Officer and a private citizen arising out of a private contract dispute or at the officer's private residence.  Plaintiff does not provide a single example at all regarding any prior unauthorized access to databases.  Plaintiff does not present any factual assertions regarding any other prior instances of misconduct by the named Individual Defendants or any similar allegations of violations by any other officers.  Instead, Plaintiff's 2AC attempts to establish a widespread pattern and practice of unconstitutional behavior by pointing to two separate groups and types of alleged and documented criminal activity.  *See* 2AC at ¶¶ 49-54, 55-78.

### 1.    2016 Department of Justice Report.

First, Plaintiff attempts to show that BPD and/or the City should have known that it was foreseeable that Lloyd, or other Individual Defendants, might have kidnapped and extorted Plaintiff in 2020 based on a private agreement relating to construction work at a personal residence simply because the Department of Justice ("DOJ") had previously documented large numbers of individuals who, between 2010 and 2015, were arrested for minor violations of the law and who were then released without being charged or whose charges were dismissed by the State's

Attorney's Office.  *See* ECF No. 29, ¶¶ 49-54.  Plaintiff briefly points the Court to the August 10, 2016 report by the U.S. Department of Justice, titled "Investigation of the Baltimore City Police Department" ("DOJ Report").[10]  *See id.*

The DOJ Report details a history of BPD officers "mak[ing] investigative stops without reasonable suspicion" which "escalate street encounters and contribute to officers making arrests without probable cause."   DOJ Report, at 24.  The DOJ noted that the pattern of constitutional violations arose from the BPD's "zero tolerance" enforcement strategy, which "prioritized attempts to suppress crime by regularly stopping and searching pedestrians and arresting them on any available charges."  *Id.*

Plaintiff's assertions regarding the DOJ Report are limited exclusively to conclusory statements about the DOJ's conclusions and findings.  *Id.*  Plaintiff's 2AC does not provide a single factual statement regarding the events detailed within the DOJ report that can be considered in terms of whether he has sufficiently pled a *Monell* claim.  *See Jones v. Jordan*, 2017 WL 4122795, at *9-10 (D. Md. Sept. 18, 2017) (ruling that while Plaintiff's complaint referenced findings within the DOJ report, he also included enough specific factual assertions in his complaint to state the extent of the alleged unconstitutional practice was "widespread or flagrant" enough for a condonation claim).   Unlike the plaintiff in *Jones v. Jordan*, who included specific factual assertions from the DOJ Report in his complaint, here Plaintiff included only the conclusory findings of the DOJ in his 2AC.  *See* 2AC ¶ 49-54; *but see Jones*, 2017 WL 4122795, at *9-10; *see also E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (the court "need not accept the legal conclusions drawn from the facts") (citing *Schatz v.*

---

[10] A full copy of the DOJ Report, titled "Investigation of the Baltimore City Police Department," is available at: https://www.justice.gov/crt/file/883296/download. (last accessed 7/13/23).

*Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991)).  Plaintiff's allegations cannot rest solely on the conclusory statements of the DOJ without including information regarding additional specific instances of misconduct.

Plaintiff then alleges, without a single supporting factual assertion, that "this pattern and practice of behavior continued, and remained in existence on June 25, 2020."  ECF No. 29, ¶ 52. Plaintiff does not provide a single fact to support this conclusory allegation, and accordingly the assertion must be disregarded entirely.  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also E. Shore Markets, Inc.,* 213 F.3d at 180.

However, even if the DOJ report were considered, the alleged unlawful conduct in this case is entirely dissimilar to the conduct addressed and analyzed by the DOJ.  The instant case does not involve an investigative stop, a street encounter, or an arrest without probable cause.  Rather, this case involves a pre-determined meeting between Plaintiff and Lloyd, regarding home-improvement work that escalated into a contract dispute and an alleged kidnapping and robbery. Therefore, Plaintiff's inclusion and reference to the DOJ report is entirely unsupportive of his claim of a persistent and widespread pattern and practice of similar constitutional violations.

### 2.    2022 Steptoe Report regarding the Gun Trace Task Force.

In addition to the purely conclusory statements Plaintiff culled from the DOJ Report, Plaintiff also referenced and incorporated data from the "Steptoe Report," a 2022 investigative report into BPD's Gun Trace Task Force titled "Anatomy of the Gun Trace Task Force Scandal: Its Origins, Causes, and Consequences."  ECF No. 29, ¶¶ 55-78.[11]   Unlike Plaintiff's use of just

---

[11] A full copy of Steptoe & Johnson LLP's investigative report on the Gun Trace Task Force titled "Anatomy of the Gun Trace Task Force Scandal: Its Origins, Causes, and Consequences" (January 2022), is *available at*: https://www.steptoe.com/a/web/219380/3ZF1Gi/gttf-report.pdf.

the conclusions from the DOJ Report, Plaintiff included specific factual allegations regarding prior instances of unconstitutional conduct by members of the Gun Trace Task Force ("GTTF") Unit. *Id*.

Plaintiff asserts at least twenty-three (23) separate incidents of allegedly unconstitutional conduct, specifically theft of money, by the members of the GTTF between 2011 and 2016.  *Id*. BPD acknowledges, for the purpose of this Motion, that Plaintiff's allegations regarding the GTTF incidents likely asserts a persistent and widespread pattern and practice of stealing money from criminal suspects by GTTF officers between 2011 and 2016.  ECF No. 29, ¶¶ 55-78.  However, the conduct alleged by the GTTF Officers is dissimilar to the conduct alleged against the Individual Defendants in this case.

Here, the 2AC is devoid of sufficient allegations of misconduct and therefore Plaintiff has not met his burden of pleading sufficient facts to establish a "persistent and widespread practice" that BPD officials were, or should have been, aware of *prior* to June 25, 2020.  Accordingly, Plaintiff has failed to state a *Monell* claim and Count X must be dismissed.

### C.   Plaintiff failed to state a claim for failure to train, supervise or discipline.

Plaintiff does not state a plausible claim for relief with respect to training, supervision or discipline.  The 2AC fails to adequately identify any specific, factual bases for these claims and does not sufficiently plead any causal link between the actions of the Individual Defendants and any past failure(s) in BPD's training, supervision, or discipline that amounted to a deliberate indifference to his constitutional rights.  A municipality's *Monell* liability "is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Liability will attach only "[i]n limited circumstances." *Id.* Where a claim is based on inadequate training, a plaintiff must establish "a ***specific deficiency*** rather than general laxness or ineffectiveness in training." *Spell*, 824 F.2d at 1390 (emphasis added). Instead, "the plaintiff must allege facts that reveal: (1) the nature of the

training, (2) that the training was a deliberate or conscious choice by the municipality, and (3) that the officer's conduct resulted from said training." *McDowell v. Grimes*, No. GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. 2018) (citations omitted). As Judge Russell stated:

> The nature of the training element requires more than bald assertions that police officers were not properly trained. It is not sufficient to state in broad, conclusory terms and in a variety of different ways that the police department failed to train and supervise its officers. Nor is alleging a general laxness or ineffectiveness sufficient to state a claim. Instead, a plaintiff must allege a specific deficiency with the training.

*Id.* (internal citations and quotations omitted). The *McDowell* Court ultimately dismissed the claims against BPD to the extent that they were based on a failure to train because the plaintiff did not address "specific aspects of [the] training program," and held that "[a]bsent any factual detail about the training program, [plaintiff] fails to state a claim." *Id.*

A plaintiff must establish "that the specific deficiency or deficiencies [are] such as to make the specific violation ***almost bound to happen***, sooner or later, ***rather than merely likely*** to happen in the long run." *Spell*, 824 F.2d at 1390 (emphasis added) (internal quotation marks omitted). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [the local government], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-91. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. A single incident of misconduct by a police officer is not sufficient to state a claim for inadequate training. *See Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). Similarly, allegations of singular or isolated unconstitutional acts are insufficient to meet the "deliberate indifference" standard. *See e.g.*, *Brown*, 520 U.S. 398.

In the instant case, Plaintiff makes numerous allegations regarding deficiencies in BPD's training, but he makes zero allegations that any of the Individual Defendants – Lloyd, Diaz, Taylor, and/or Larbi – had a history of prior misconduct, or that they specifically lacked specific training as it related to this incident.  In other words, Plaintiff fails to allege actual facts in support of his claim.  Allegations of mere "laxness or ineffectiveness in training" are insufficient. *Spell*, 824 F.2d at 1390.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Jarrells v. Anne Arundel Cnty.*, No. CV GLR-21-2902, 2022 WL 3975173, at *7 (D. Md. Sept. 1, 2022) (citing *Connick*, 563 U.S. at 62). Because he fails to establish any specific deficiencies, Plaintiff also cannot show how the alleged training caused the conduct of the Individual Defendants *in this case*; therefore, he fails to plead, as he must, how the alleged training deficiencies caused his constitutional deprivation.

Furthermore, Plaintiff never provides a timeframe during which these unspecified training failures occurred; therefore, he fails to plead that BPD had *notice* of the training deficiencies before Plaintiff's injury and subsequently was deliberately indifferent in the face of them. Aside from these conclusory allegations that merely recite general legal elements, Plaintiff fails to plead any alleged failure to train, supervise, or discipline was a deliberate or conscious choice by BPD.

In sum, Plaintiff fails to allege any facts to support an inference BPD was deliberately indifferent to or tacitly condoned, sanctioned, or authorized the alleged unconstitutional conduct of the Individual Defendants, prior to or at the time of the June 25, 2020 incident.  Accordingly, Plaintiffs allegations are *categorically insufficient* because they are devoid of any factual detail and fail to establish a causal link between BPD and the alleged unconstitutional actions against Plaintiff by the Individual Defendants.

**D.      Plaintiff fails to establish BPD was deliberately indifferent toward Plaintiff's rights.**

Even if Plaintiff's allegations were sufficient to allege a persistent and widespread pattern and practice of similar unconstitutional conduct prior to and through August 2016, Plaintiff cannot establish that in 2020, at the time of the instant events, BPD was deliberately indifferent to citizens' rights.  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown Bryan Cty.*, 520 U.S. 397, 410 (1997)). "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986)).

In November 2013, at the direction of Baltimore's mayor, then Police Commissioner Batts issued "a five-year plan intended to 'reduce crime, improve service, increase efficiency, redouble community engagement, and provide for the highest standards of accountability and ethical integrity.'"  DOJ Report, at 18; *see also* Baltimore City Press Release, "*Mayor Rawlings-Blake and Commissioner Batts Release Strategic Plan for Baltimore Police Department*," November 21, 2013   (https://mayor.baltimorecity.gov/news/press-releases/2013-11-21-mayor-rawlings-blake-and-commissioner-batts-release-strategic-plan) (last accessed 7/13/2023).   Immediately after detailing the specific incidents of alleged unconstitutional behavior of the GTTF members between 2011 and 2016, Plaintiff points out that in 2017 and 2018 many of those same GTTF officers were indicted and convicted for their conduct as members of the GTTF.  *Id.*, ¶¶ 79-86; *see also United States v. Gondo et al.*, Case 1:17-cr-00106-GLR (D. Md. 2017).  The Steptoe Report pointed out that, at the time it was published, "13 defendants [had] been charged with crimes growing out of the original federal investigation."  Steptoe Report, at ii.

Additionally, following the release of the DOJ Report, the DOJ and the BPD jointly sought to enter a Consent Decree "to ensure that the agreed-upon comprehensive measures to reform BPD are implemented fully and faithfully." *See* Memorandum in Support of Joint Motion for Entry of Consent Decree, *United States v. Baltimore City Police Dep't*, 1:17-cv-00099-JKB (D. Md. January 12, 2017), ECF No. 2-1.  In fact, the creation of the Steptoe Report itself arose from the BPD's own desire to investigate the issues that led to the unconstitutional conduct of the GTTF, and to prevent the same conduct from happening again.  *See* Motion to Approve Investigation of Gun Trace Task Force Scandal, *Baltimore City Police Dep't*, 1:17-cv-00099-JKB (D. Md. October 23, 2019), ECF No. 251, (BPD requesting the Court to "approve its proposal for a comprehensive, independent, transparent investigation into the causes, scope, and evolution of criminal behavior and other misconduct that managed to thrive in the now-disbanded Gun Trace Task Force").

In the years between the DOJ Report, the public indictments and convictions of the GTTF officers, and through the Consent Decree process, BPD revised, updated, and/or created new policies, including but not limited to Use of Force (ECF No. 142), Stops, Searches, Arrests, and Voluntary Police-Community Interactions (ECF No. 171).  BPD has also updated and/or created training modules, which were reviewed and approved by this Court and the Consent Decree monitoring team, including but not limited to a new "General Training Plan" that specifically addressed training goals in the areas of Use of Force; Stops, Searches and Arrests; and Impartial Policing.  *See* Notice of Approval of General Training Plan, *Baltimore City Police Dep't*, 1:17-cv-00099-JKB (D. Md. October 31, 2018), ECF No 148, 148-1 at 5-7.  BPD's 2019 General Education and Professional Development Plain, approved by the Consent Decree Monitor, noted as follows:

> In sum, training is needed to staff the Department with sworn members who are dedicated to upholding the Constitution and enforcing laws in a fair, impartial and ethical manner, and to promote professionalism, enhance the community and support police officer safety. For new members of the Department, basic law

enforcement skills and tactics, weapons qualifications, ethics training, etc., are required to become certified police officers. For current members, continuing education is needed to hone learned skills, develop new skills, maintain certifications and understand changes in law and policy. Regardless of the learner or topic, training is needed to fulfill the mission, values and goals of the BPD

*Id.*

At best, Plaintiff has presented an unsupported history of quality of life arrests made without probable cause, prior to 2016, and a specific pattern of dissimilar and/or distinguishable unconstitutional conduct by a specific unit (of which the Individual Defendants in this case were neither assigned nor affiliated) between 2011-2016, which led to that unit being disbanded and many of its members being prosecuted criminally for their conduct. *See* ECF No. 29, ¶¶ 50-54, 55-78, 79-86.

In contrast, between 2016 and 2020, BPD took extensive and very public steps toward improving its relationships with the community and to ensure that its officers were better trained to conduct police operations within the bounds of the law, by taking numerous specific, measurable, and applicable steps to address the types of issues identified in both the DOJ Report and the Steptoe Report[12] in the 3-4 years leading up to the June 2020 incident that is the subject of this case. Plaintiff has not identified any alleged unconstitutional conduct since August 2016, prior to the filing of the Consent Decree and subsequent policing reforms. Accordingly, Plaintiff has not asserted any facts that would allow the inference, let alone the conclusion, that between August 2016 and June 25, 2020,[13] BPD was deliberately indifferent to the conduct that Plaintiff details in his 2AC and took no action to prevent future violations.

---

[12] The Steptoe Report was not published until January 2022. However, but the reforms implemented by BPD, with the approval of the Consent Decree monitor and the federal court, between 2017 and 2020, addressed systemic issues in existence prior to 2016 that were also discussed in the later published Steptoe Report.

[13] The date of the alleged unconstitutional acts, taken by the Individual Defendants against Plaintiff, is June 25, 2020. See ECF No. 29, ¶¶ 17-26. Plaintiff's 2AC identifies the last, or most recent, alleged incident of similar

**E.      Plaintiff failed to sufficiently plead causation as required for a *Monell* claim.**

In addition to the failures addressed above, Plaintiff's *Monell* claim further fails because he has not sufficiently pled that any unconstitutional policy or custom, by either the City or BPD, was the "moving force" behind the violation of his or her rights. *See Connick*, 563 U.S. at 60-61; *see also Brown*, 520 U.S. at 404; *see also Canton*, 489 U.S. at 385 (Liability exists only "where the municipality *itself* causes the constitutional violation at issue."); *J.F. v. Correct Care Sols., LLC*, 2019 WL 1057401, at *7 (D. Md. Mar. 6, 2019) ("To serve as a basis for liability under § 1983, the policies or customs of a municipality must be 'the moving force [behind] the constitutional violation.") (citing *Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 671-72 (D. Md. 2003).  BPD can only be liable for the alleged unconstitutional conduct if BPD itself *caused* the constitutional violation to Plaintiff.  *Canton*, 489 U.S. at 385.  Because Plaintiff failed to allege causation, his *Monell* claim fails as a matter of law.

Federal courts apply **rigorous standards** of culpability and causation to § 1983 *Monell* claims, especially where a party is contending that either "inadequate training" or "widespread and persistent constitutional abuses" caused the violation of his or her rights. *See Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train") (citations omitted); *Brown*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."). However, "local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60 (citations and internal quotation

---

unconstitutional conduct as August 24, 2016, nearly four (4) years prior to the incident giving rise to this action. ECF No. 29, ¶ 78.

marks omitted). There must be an "affirmative link" between the identified policy or custom and the specific violation that is attributable to the municipality. *Spell*, 824 F.2d at 1389.

Plaintiff's allegations are exactly what the *Iqbal/Twombly* pleading standard prohibits. A plaintiff must establish "that the specific deficiency or deficiencies [are] such as to make the specific violation ***almost bound to happen***, sooner or later, ***rather than merely likely*** to happen in the long run." *Spell*, 824 F.2d at 1390 (emphasis added) (internal quotation marks omitted). Plaintiff fails to do so.

## IV.    ADOPTION AND INCORPORATION.

BPD anticipates separate Motions to Dismiss to be filed by the individually named Officer Defendants in this matter, as well as by the City.  The BPD hereby adopts and incorporates the arguments made in those motions to the extent that they do not conflict with any arguments made within the BPD's Motion to Dismiss and supporting Memorandum of Law.

## CONCLUSION

Plaintiff's 2AC fails to state any claims against Defendant BPD.  Accordingly, Defendant Baltimore Police Department respectfully requests this Court dismiss Plaintiff's 2AC in its entirety against the BPD, with prejudice and without leave to amend.

Respectfully submitted,

_____/s/_____
James A. H. Corley (Fed. Bar No. 30016)
Chief Solicitor
Gregory T. Fox (Fed. Bar No. 21472)
Christine E. White (Fed. Bar No. 19185)
Assistant Solicitors
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, MD 21202
410-274-8614 / 410-396-2126 (facsimile)
Jim.corley@baltimorepolice.org
*Counsel for Defendant BPD*