IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LUIS ALFONSO TORRES HERNANDEZ,        *

      Plaintiff,        *

      v.        *        Case No.  1:23-cv-01016-JRR

MAYOR & CITY COUNCIL        *
OF BALTIMORE CITY, *et al.*,
                    *

      Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## **DEFENDANT JAMES A. LLOYD'S PARTIAL MOTION TO DISMISS**

Defendant James A. Lloyd, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and Local Rule 105, moves to dismiss in their entirety with prejudice and without leave to amend Counts V, VII, VIII, and X, the claim for violation of the Fourteenth Amendment alleged in Count IX, and the official capacity claims alleged in Counts I-V and VII-VIII.[1] The grounds for this Motion are set forth more fully in the attached memorandum of law, which is incorporated herein.

---

[1]     Mr. Lloyd, pursuant to Fed. R. Civ. P. 12(a)(4), will file an answer to all counts or portions thereof that may survive after the Court decides this Motion.  *See Saman v. LBDP, Inc.*, Civ. No. DKC 12-1083, 2012 WL 5463031, at *4 n. 1 (D. Md. Nov. 7, 2012) ("The vast majority of courts have found it 'best to stall the proceedings on all counts until after the court rules on the 12(b)(6) motion.'") (quoting *Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002)); *Jacobson v. Allstate Ins., Co.*, No. WDQ-06-1629 2006 WL 8456604, *2 (D. Md. Oct. 17, 2006) ("This Court adopts the majority view, and construes Rule 12(a)(4) to provide that service of a 12(b) motion that addresses only part of a complaint suspends the time to respond to the entire complaint."); *Maass v. Lee*, Case No. 1:16-cv-66, 2016 WL 2899262, at *4 (E.D. Va. May 17, 2016) ("As the [defendant] correctly notes – and numerous courts have held – the filing of a Rule 12, Fed. R. Civ. P., motion for partial dismissal postpones the deadline for filing an answer to all claims, not just those subject to the motion.").

**WHEREFORE**, Mr. Lloyd requests that this Court grant this Motion.

Dated: July 31, 2023

_/s/  Christopher C. Jeffries_

Christopher C. Jeffries (Bar No. 28587)
John A. Bourgeois (Bar No. 11834)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax: (410) 539-1269
cjeffries@kg-law.com
jbourgeois@kg-law.com

_Counsel for James A. Lloyd_

4873-0830-1172, v. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LUIS ALFONSO TORRES HERNANDEZ     *

       Plaintiff,              *

       v.                      *       Case No.:  1:23-cv-01016-JRR

MAYOR & CITY COUNCIL          *
OF BALTIMORE CITY, *et al*.,
                         *

       Defendants.

*    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAMES A. LLOYD'S PARTIAL MOTION TO DISMISS

## I.     INTRODUCTION

On June 26, 2023, Plaintiff, Luis Alfonso Torres Hernandez, filed his Second Amended Complaint (ECF 29) (the "SAC") against the Mayor & City Council of Baltimore ("M&CC"), the Baltimore Police Department ("BPD"), James A. Lloyd, Juan Diaz, Troy Taylor, and Manuel Larbi (the "Individual Defendants").  The Individual Defendants, each of whom is alleged to have been employed by the M&CC and the BPD at all relevant times, are sued in their individual and official capacities.  The SAC alleges nine counts against Mr. Lloyd: false imprisonment (Count I); false arrest (Count II); violation of Article 24 of the Maryland Declaration of Rights (Count III); violation of Article 26 of the Maryland Declaration of Rights (Count IV); civil conspiracy (Count V); intentional infliction of emotional distress (Count VII); conversion (Count VIII);

violation of 42 U.S.C. § 1983 against Mr. Lloyd in his individual capacity (Count IX); and violation of 42 U.S.C. § 1983 against Mr. Lloyd in his official capacity (Count X).

This lawsuit arises from a series of encounters between Plaintiff and Mr. Lloyd which began in May 2020 and ended on June 25, 2020.  More specifically, in May 2020, Plaintiff and Mr. Lloyd agreed that Plaintiff would build a stone patio at Mr. Lloyd's home for $7,000.  While Mr. Lloyd was initially satisfied with the patio, within days of its installation Mr. Lloyd contacted Plaintiff because of issues with its pavers.

After a meeting at Mr. Lloyd's home with Plaintiff's then-fiancé, Karen Holmes, at which Det. Diaz was present, Plaintiff agreed to repair the patio.  Plaintiff claims that, at that meeting, Ms. Holmes also asked him to enlarge the patio.  Plaintiff agreed to do that work as well.

Plaintiff arrived at Mr. Lloyd's house on the morning of June 25, 2020, to perform the work.  Plaintiff claims that, when he arrived, Mr. Lloyd was present along with Dets. Taylor, Larbi, and Diaz, all of whom were on duty and had been ordered by Mr. Lloyd to be at his house.  At some point before Plaintiff arrived at Mr. Lloyd's home on June 25th, Mr. Lloyd instructed Det. Larbi to run a criminal records check on Plaintiff.

According to Plaintiff, when he arrived at Mr. Lloyd's home, Mr. Lloyd exited his unmarked BPD vehicle with his firearm visible, approached Plaintiff, and began speaking with him.  At some point, Mr. Lloyd asked for Plaintiff's driver's license.  Plaintiff produced his license and Mr. Lloyd told Det. Taylor to run it through law enforcement databases.  Detective Taylor followed that order and reported to Mr. Lloyd that Plaintiff's license was suspended.  Mr. Lloyd relayed that information to Plaintiff and allegedly said

that he would arrest Plaintiff unless Plaintiff returned the money he'd been paid by Mr.

Lloyd.  Detective Diaz, with his gun and badge visible, also told Plaintiff to give the

money back.  Mr. Lloyd also allegedly told Dets. Larbi and Taylor to take Plaintiff

"downtown" because he was driving on a suspended license.  Mr. Lloyd asked Plaintiff

what bank he used, learned that it was Navy Federal Credit Union, and drove Plaintiff

there.  Plaintiff claims Mr. Lloyd threatened Plaintiff during that drive.  Plaintiff and Mr.

Lloyd arrived at the bank and Plaintiff obtained a cashier's check for $3,500, which Mr.

Lloyd later deposited.  Mr. Lloyd drove Plaintiff back to Mr. Lloyd's home where

Plaintiff had left his vehicle.

Plaintiff later reported the incident to police.  Mr. Lloyd was charged with, *inter
alia*, misconduct in office.  On July 15, 2022, he entered a guilty plea to that charge under

*North Carolina v. Alford*, 400 U.S. 25 (1970).  He was sentenced to three years of

imprisonment with all but one year suspended.  This lawsuit followed.

Certain of Plaintiff's claims should be dismissed in their entirety and others should

be dismissed in part.  Plaintiff's claims for civil conspiracy, intentional infliction of

emotional distress, conversion, and violation of § 1983 against Mr. Lloyd in his official

capacity should be dismissed in their entirety.  Additionally, Plaintiff's state law official

capacity claims and Plaintiff's Fourteenth Amendment claim alleged in Count IX also

should be dismissed.

Plaintiff's conspiracy claim, Count V, should be dismissed for three separate

reasons.  Under Maryland law, civil conspiracy claims should not be alleged as separate

causes of action.  *Woods v. Stewart Title Guar. Co.*, No. CCB-06-0705, 2006 WL

3

2135518, at *4 (D. Md. Jul. 28, 2006) (quoting *Manikhi v. Mass Transit Admin*., 758

A.2d 95, 110 n. 6 (Md. App. 2000)).  Further, Plaintiff fails to allege facts demonstrating

the existence of an agreement amongst the individual defendants — a required element of

any conspiracy claim.  *See Lloyd v. General Motors, Corp.*, 916 A.2d 257, 284 (Md.

2007) (quoting cases) (setting forth elements of conspiracy).  Finally, because Plaintiff

alleges that the individual defendants are agents of the same principals, the BPD and the

M&CC, Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine.

*See Estate of Bryant v. Baltimore Police Department,* No. ELH-19-384, 2020 WL

673571, at *1, *25-*27 (D. Md. Feb. 10, 2020).

Plaintiff's intentional infliction of emotional distress ("IIED") claim, Count VII,

should be dismissed because Plaintiff fails to plead a severe emotional response, a

required element of an IIED claim.  *See Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247-48

(D. Md. 1997).

Plaintiff's conversion claim, Count VIII, should be dismissed because, under

Maryland law, money is not typically subject to conversion claims.  *Allied Inv. Corp. v.

Jasen,* 731 A.2d 957, 966 (Md. 1999) (citations omitted).

Plaintiff's official capacity claim against Mr. Lloyd in Count X should be

dismissed because (1) Plaintiff fails to allege facts sufficient to support such a claim and

(2) it is duplicative of Plaintiff's claims alleged against the M&CC and the BPD in this

same count, *see Cottman v. Baltimore Police Dep't*, No. SAG-21-00837, 2022 WL

137735, at *5 (D. Md. Jan. 3, 2022).

4

Plaintiff's state law official capacity claims alleged in Counts I-V and VII-VIII should be dismissed because they are barred by State sovereign immunity.  *See Jones v. Chapman*, No. ELH-14-2627, 2015 WL 4509871, at *1, *8-*10 (D. Md. Jul. 24, 2015).

Finally, the Fourteenth Amendment claim alleged in Count IX should be dismissed because Plaintiff's claims arise, if at all, under the Fourth Amendment.

## II.    FACTS ALLEGED IN THE SAC[2]

In May of 2020, Mr. Lloyd, then a Sergeant with the BPD's Homicide Unit, hired Plaintiff to construct a stone patio at his home and agreed to pay him $7,000 for the work. *See* SAC ¶¶ 7, 11-12.  Plaintiff completed the construction at some point before June 12, 2020.  *See id*. ¶ 14.  Initially, Mr. Lloyd was satisfied with the work.  *Id.*  But, on June 18, 2020, Mr. Lloyd called Plaintiff to complain about issues with the pavers.  *Id.* ¶ 15.

Thereafter, on an unspecified date, Plaintiff inspected the patio.  *Id.* ¶ 16.  Mr. Lloyd's then-fiancé and Det. Diaz were present during this inspection.  Plaintiff contends that he agreed to repair the issue with the pavers, and that Mr. Lloyd's then-fiancé requested that he enlarge the patio.  *Id.*  Plaintiff agreed to perform the extra work and indicated that he would charge Mr. Lloyd "for the extra materials and the at-cost price of the labor for the subcontractor to perform the work."  *Id.*

On some date before June 25, 2020, Mr. Lloyd requested that Det. Larbi run a criminal records check and a motor vehicle check on Plaintiff.  *Id.* ¶ 20.

---

[2]    Mr. Lloyd accepts the allegations in the SAC as true for purposes of this Motion only.

Plaintiff came to Mr. Lloyd's home on June 25, 2020, at approximately 9:30 a.m., to perform the additional work. *Id.* ¶¶ 18, 21. Mr. Lloyd requested that Dets. Taylor, Larbi, and Diaz come to Mr. Lloyd's house while Plaintiff was there. *Id.* ¶ 18. Each of the Individual Defendants was on duty with the BPD on that date and time. *Id.* ¶¶ 17-18. When Plaintiff arrived, his work crew was already present. *Id*. ¶ 21. The work crew's vehicle was blocked-in by an unmarked BPD minivan driven by Dets. Taylor and Larbi. *Id.* ¶¶ 21-22. Det. Diaz also drove an unmarked BPD vehicle to Mr. Lloyd's home. *Id*. ¶ 23.

Mr. Lloyd exited his unmarked BPD vehicle and, with his service firearm visible, told Plaintiff there were problems, and asked for his contract. *Id.* ¶ 24. Plaintiff and Mr. Lloyd went to the back of Mr. Lloyd's home, at which point Mr. Lloyd asked to see Plaintiff's driver's license. *Id.* ¶ 26. Detective Taylor ran Plaintiff's driver's license and license plate, allegedly in violation of BPD policies, determined that Plaintiff had a suspended driver's license, and provided that information to Mr. Lloyd. *Id*. ¶¶ 27-28. Mr. Lloyd informed Plaintiff that Plaintiff's license was suspended, and told Plaintiff that he would be arrested unless he returned to Mr. Lloyd the money he'd already been paid. *Id*. ¶ 29. At some point after those statements, Det. Diaz, approached Plaintiff, with his gun and badge visible, and said "all you have to do is give [Mr. Lloyd's] money back." *Id.* ¶ 31. Mr. Lloyd then called Dets. Larbi and Taylor and "asked them to take Plaintiff downtown because he was driving on a suspended license." *Id.* ¶ 32. According to Plaintiff, Dets. Larbi and Taylor then, "with their badges and guns visible," approached Plaintiff. *Id.*

Mr. Lloyd requested his money back from Plaintiff and asked Plaintiff what bank he used. Plaintiff said he used Navy Federal Credit Union. *Id.* ¶ 34. Mr. Lloyd drove Plaintiff in his BPD issued vehicle to a Navy Federal Credit Union branch and, according to Plaintiff, threatened him during the drive. *Id.* ¶¶ 36-37. Plaintiff entered the bank and requested a cashier's check for $3,500. Plaintiff does not allege how he and Mr. Lloyd arrived at that figure. Plaintiff conveyed the cashier's check to Mr. Lloyd who later deposited it. *Id.* ¶ 39-40. Mr. Lloyd then drove Plaintiff back to Mr. Lloyd's home. Plaintiff, however, did not immediately leave because of his suspended license. Mr. Lloyd called Plaintiff, Plaintiff said that he was afraid of being arrested because of his suspended license, and Mr. Lloyd "ordered him to just leave." *Id.* ¶ 41. Later that day, Plaintiff reported the incident to Baltimore County Police. *Id*. ¶ 43.

On July 9, 2020, Mr. Lloyd was charged with extortion and kidnapping. He was subsequently indicted and charged with misconduct in office, extortion, and kidnapping. On June 15, 2022, Mr. Lloyd entered an *Alford* plea to one count of misconduct in office. The Court subsequently sentenced Mr. Lloyd to a period of incarceration. *See id.* ¶¶ 45-48.

## III.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "challenges the court's authority to hear the matter brought by a complaint." *TECH USA, Inc. v. Milligan*, No. RDB-20-0310, 2021 WL 795151, at *3 (D. Md. Mar. 1, 2021). The plaintiff must "allege[] sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d

187, 192 (4th Cir. 2009); *Hufford v. Bank United, FSB*, No. RDB-11-01207, 2011 WL 4985920, at *2 (D. Md. Oct. 18, 2011) ("A plaintiff carries the burden of establishing subject matter jurisdiction."). "'[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

    **B.      Fed. R. Civ. P. 12(b)(6).**

    On a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court "will construe the factual allegations in the non-moving party's favor and will treat them as true, but the court is not bound by the complaint's legal conclusions." *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). To survive the motion, "the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56, 570 (2007)). "[T]he court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, [*Ashcroft v. Iqbal,* 550 U.S. 662, 678 (2009)]." *Hart v. Shearin*, No. CV GLR-15-2056, 2016 WL 3459846, at *3 (D. Md. Jun. 24, 2016).

4873-0830-1172, v. 1

## IV.    ARGUMENT

### A.    Count V, Plaintiff's state law conspiracy claim, should be dismissed.

Plaintiff's state law conspiracy claim alleged in Count V, *see* SAC ¶¶ 117-120, should be dismissed for three separate reasons.  First, a conspiracy claim is not a stand-alone tort and, therefore, should not be pleaded as an independent cause of action. Second, Plaintiff fails to allege facts as opposed to conclusory allegations to establish an agreement, which is a required element of any conspiracy claim.  Finally, even if Plaintiff could overcome those legal deficiencies (he cannot), his claim would still be barred by the intra-corporate conspiracy doctrine.

### 1.    Conspiracy is not a stand-alone tort and, therefore, should not be pleaded as an independent cause of action.

Conspiracy is not a stand-alone tort under Maryland law.  *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1044 (Md. 1995).  As the *Alleco* Court explained, the Supreme Court of Maryland "has consistently held that 'conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.'"  *Id.* at 1045 (quoting *Alexander v. Evander*, 650 A.2d 260, 265 n. 8 (Md. 1994)).  "Under Maryland law, civil conspiracy provides a means of holding a co-conspirator liable for acts committed in furtherance of the conspiracy by another member."  *Woods*, 2006 WL 2135518, at *4 (citing *Mackey v. Compass Marketing, Inc.*, 892 A.2d 479, 485 (Md. 2006)).[3]  As Maryland's Supreme

---

[3]    In this matter, Plaintiff is not seeking to have Mr. Lloyd held liable for the acts of his co-defendants.  Instead, Plaintiff is seeking to have Mr. Lloyd's co-defendants held liable for Mr. Lloyd's alleged acts.  Thus, the alleged conspiracy does not apply to the claims against Mr.

Court has stated, "The unlawful agreement is not actionable by itself; rather, the '[t]ort actually lies in the act causing the harm' to the plaintiff." *Mackey,* 892 A.2d at 485 (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)).  For this reason, "civil conspiracy is not 'capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.'" *Id.* (quoting *Hoffman*, 867 A.2d at 290).  And, "it is 'improper pleading to allege … conspiracy in [a] separate count[]". *Woods*, 2006 WL 2135518, at * 4 (quoting *Manikhi*, 758 A.2d at 110 n. 6).  Here, Count V should be dismissed because it improperly alleges conspiracy in a separate count.  *See id.*

## 2. Count V should be dismissed because Plaintiff fails to allege facts demonstrating the existence of an agreement.

A civil conspiracy claim requires proof of three elements: "'1) a confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act dune in furtherance of the conspiracy or use of lawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damages resulting to the plaintiff.'" *Lloyd v. General Motors, Corp.*, 916 A.2d 257, 284 (Md. 2007)) (quoting cases) (internal quotation marks omitted).

Count V should be dismissed because Plaintiff does not allege any facts demonstrating an agreement between the named defendants.  Instead, Plaintiff alleges in a conclusory fashion that: "[The Individual Defendants] — acting as agents of the B[PD] and the M[&CC] — entered into an agreement to extort Plaintiff, convert money from

---

Lloyd.  It arguably would apply to the claims against his co-defendants if it were a viable cause of action.

4873-0830-1172, v. 1

Plaintiff, kidnap Plaintiff, engage in misconduct in office, falsely arrest Plaintiff, falsely imprison Plaintiff, and violate Plaintiff's rights under Article 24 and 26 of the Maryland Declaration of Rights." SAC ¶ 118. This, however, is a conclusory allegation that this Court need not credit. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.)). The failure to allege the existence of an agreement is fatal. "A clear agreement to conspire is necessary because the '[i]ndependent acts of two wrongdoers do not make a conspiracy." *Hill v. Brush Engineered Materials*, *Inc.*, 383 F.Supp.2d 814, 821 (D. Md. 2005) (quoting *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981)). Here, Plaintiff does not allege a single fact supporting his allegation of an agreement. Rather, Plaintiff alleges acts taken by the Individual Defendants. But pleading facts "that are 'merely consistent with' liability [is] not sufficient." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). For this reason, Count V should be dismissed.

### 3.   Count V should be dismissed because it is barred by the intra-corporate conspiracy doctrine.

Plaintiff alleges that the M&CC "employed the individual defendants as sworn police officers with the [BPD]," SAC ¶ 5, and that they "worked for the [BPD]," SAC ¶ 6.

Under the intra-corporate conspiracy doctrine, agents from a single legal entity are "legally incapable of conspiracy, which requires multiple parties acting together."

*Williams v. Mayor, Baltimore City*, No. WMN-14-1125, 2014 WL 5707563, at *6–7 (D.

Md. Nov. 4, 2014) (quoting *Lewin v. Cooke*, 28 Fed. Appx. 186, 195 (4th Cir. 2002)).

That doctrine is based on two principles: "'[a] corporation cannot conspire with itself any

more than a private individual can, and it is the general rule that the acts of the agent are

the acts of the corporation.'" *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985)

(citation omitted).  Stated differently:

> The rule is derived from the nature of the conspiracy prohibition.  Conspiracy requires an agreement — and in particular an agreement to do an unlawful act — between or among two or more separate persons.  When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal.  And it then follows that there has not been an agreement by two or more separate people.

*Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Independence*

*Tube Corp.*, 467 U.S. 752, 771 (1984)).

The intra-corporate conspiracy doctrine is recognized under Maryland law.  *See*

*Harnish v. Herald-Mail Co.*, 286 A.2d 146, 152-53 (Md. 1972).  In *Harnish*, the Court

affirmed the trial court's decision granting a motion for judgment as a matter of law on a

conspiracy claim against a newspaper and one of its reporters.  *Id.* ("[i]t is doubtful at

least that an employee of a corporation and that corporation can conspire where the

employee is acting only for the corporation and not for any personal purpose of his own")

(citations omitted).  In reaching its decision, the Court cited, *inter alia*, *Nelson Radio &*

*Supply Co.* v. *Motorola*, 200 F.2d 911, 914 (5th Cir. 1952).  *Harnish*, 286 A.2d at 153.

The intra-corporate conspiracy doctrine "grew out of the decision in" *Nelson*. *Buschi*, 775 F.2d at 1251.  In *Nelson*, the plaintiff alleged a conspiracy between the defendant corporation and its officers, employees, and agents.  200 F.2d at 913.  The Court affirmed dismissal, holding:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Id*. at 914.  *See also*, *Kairys v. Douglas Stereo Inc.*, 577 A.2d 386, 393 (Md. App. 1990), overruled on other grounds by, *Montgomery Ward v. Wilson*, 664 A.2d 916 (Md. 1995) ("The law is well-settled … that a conspiracy between a corporation and its agents, *acting within the scope of their employment,* is a legal impossibility"), (emphasis added) (quoting *Marmott v. Maryland Lumber Co.,* 807 F.2d 1180, 1184 (4th Cir. 1986)); *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193, 1221 n. 14 (Md. App. 2011), abrogated on other grounds by, *Plank v. Cherneski*, 231 A.3d 436 (Md. 2020) (under the intra-corporate conspiracy doctrine, "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.  In essence this means that a corporation['s] … employees, when acting in the scope of their employment, cannot conspire among themselves.") (quoting *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 744 (D. Md. 2008)).

This Court has repeatedly applied the doctrine to dismiss § 1983 conspiracy claims filed against current or former BPD officers.  *See Kangalee v. Baltimore City Police*

*Dep't*, No. RDB-12-01566, 2012 WL 5457231, at *7-8 (D. Md. Nov. 7, 2012); *Williams*, 2014 WL 5707563, at *6-7; *Burgess v. Baltimore Police Dep't*, No. RDB-15-0834, 2016 WL 795975, at *10-11 (D. Md. Mar. 1, 2016); *Bumgardner v. Taylor*, No. GLR-18-1438, 2019 WL 4115414, at *7-8 (D. Md. Aug. 29, 2019).  The Court has also recognized the applicability of the doctrine to state law conspiracy claims against former BPD members. *See Bryant,* 2020 WL 673571, at *1, *25-*27.

In *Kangalee*, *Williams*, *Burgess*, and *Bumgardner*, as in this case, the plaintiff alleged something equivalent or similar to what Plaintiff alleges here: that each defendant officer "was, at all times relevant, employed … with the Baltimore City Police Homicide Department Homicide Unit, and acted in his official capacity and within the scope of his employment."  SAC ¶¶ 7-10.  Here, Plaintiff also alleges that the Individual Defendants were "acting as agents of the [BPD] and the [M&CC]" when they allegedly entered into a conspiratorial agreement.  SAC ¶ 118.

Relying on the intra-corporate conspiracy doctrine, the Fourth Circuit has affirmed the dismissal of a conspiracy claim against defendants who were alleged to be employees of the same entities.  *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d. 342, 352 (4th Cir. 2013).  In *Painter's Mill*, a restaurant filed a § 1985(3) conspiracy claim against its landlord, the landlord's parent company, and three individuals, each of whom were employed by the landlord and its parent.  *Id.* at 345.  The Fourth Circuit affirmed the dismissal because the "complaint alleges that the three conspirators were also agents of the same two companies" and thus "it cannot allege a conspiracy[.]" *Id.* at 353.

Here, as in *Kangalee*, *Williams*, *Burgess*, *Bumgardner*, and *Painter's Mill Grille,*

14

*LLC*, Plaintiff alleges that, at all relevant times, the alleged co-conspirators were all employees of the M&CC and BPD working within the scope of their employment.  *See* SAC ¶¶ 5-10.  That Plaintiff also alleges that the individual defendants were also employed by the M&CC is of no moment because they are still employed by the same entities and, thus, unable as a matter of law to conspire with one another.[4]  *See Painter's Mill*, 716 F.3d at 353.  Because Plaintiff expressly alleges that defendants were employees of the same employer, the defendants, as a matter of law, *cannot* enter into a conspiracy together.  *See Kangalee*, 2012 WL 5457231, at \*7; *Williams*, 2014 WL 5707563, at \*6-7; *Burgess*, 2016 WL 795975, at \*10-11; *Bumgardner*, 2019 WL 4115414 at \*7-8; *Painter's Mill Grille, LLC*, 716 F.3d. at 353.[5]

\*   \*   \*

For all of these reasons, Count V should be dismissed.

## B.    Plaintiff's IIED claim should be dismissed.

Count VII alleges IIED.  *See* SAC ¶¶ 128-132.  Plaintiff has not pled sufficient facts to support an IIED claim, which requires a plaintiff to plead and prove with specificity the following elements:

(1)    The conduct must be intentional or reckless;
(2)    The conduct must be extreme and outrageous;

---

[4]    The M&CC is not considered the employer of the Individual Defendants.  As support for this proposition, Mr. Lloyd hereby adopts and incorporates Section I of the Argument in the Memorandum of Law filed on behalf of the M&CC in support of its motion to dismiss, ECF 35-1, at ECF pp. 8-10.

[5]    Plaintiff does not allege in support of Count V that any exception to the intra-corporate conspiracy doctrine exists in this case.  Mr. Lloyd does not believe that any exception applies either, and so need not address any exception here.

15

      (3)     There must be a causal connection between the wrongful conduct and the emotional distress; and

      (4)     The emotional distress must be severe.

*Farasat*, 32 F. Supp. 2d at 247 (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). IIED claims are "rarely viable." *Id.* (citing *Bagwell v. Peninsula Regional Med. Ctr.*, 665 A.2d 297, 319 (Md. App. 1995)). "[A]n IIED claim is subject to a heightened pleading standard, and each element of the claim must be 'pled with specificity.'" *Thomas v. Maryland*, No. GJH-17-1739, 2017 WL 6547733, at *4 (D. Md. Dec. 20, 2017) (quoting *Washington v. Maynard*, No. GLR-13-3767, 2016 WL 865359, at *10 (D. Md. Mar. 7, 2016)). Thus, conclusory allegations that a plaintiff suffered "severe emotional distress," SAC ¶ 132, and that a defendant's actions were "extreme and outrageous," *see id.* ¶ 130, are not sufficient. "To proceed further with a claim like this one, a plaintiff must allege a severely disabling emotional response, so acute that no reasonable man could be expected to endure it." *Farasat*, 32 F. Supp. 2d at 248 (citation and internal quotations omitted).

      In *Farasat*, the Court dismissed an IIED claim where there were "no allegations in the amended complaint that plaintiff was ever treated by a physician for his mental anguish, that he was ever hospitalized because of a severely disabling emotional condition, that he lost sleep or weight, or that he was unable subsequently to live a normal life." *Id.* "In Maryland, an IIED claim is 'rarely viable', [*Borchers v. Hyrchuk*, 727 A.2d 388, 392 (Md. App. 1999)], and courts have imposed 'liability sparingly and … limited the tort to situations where the 'wounds are truly severe and incapable of healing themselves.'" *Nash v. Montgomery County,* Maryland, No. GJH-20-1138, 2021 WL

1222874, at *7 (D. Md. Mar. 31, 2021) (quoting *Lee v. Queen Anne's Cty. Off. of Sheriff*, No. RDB-13-672, 2014 WL 476233, at *16 (D. Md. Feb. 5, 2014)).

Here, Plaintiff fails to plead facts to establish severe emotional distress.  Plaintiff alleges that he "suffered damages in the form of emotional pain and suffering, extreme anxiety, emotional distress, economic loss, humiliation, intimidation, fear for his life and safety, and loss of enjoyment of life."  SAC ¶ 132.  He further alleges that his "anxiety and fear caused him to stop working in the Baltimore area for a period of time, which was the location of the vast majority of Plaintiff's work.  Plaintiff continues to suffer from bouts of anxiety."  *Id*.  These conclusory allegations are insufficient as a matter of law and fail to state a claim.  Plaintiff fails to allege with any specificity that he could not live a normal life.  Similarly, Plaintiff fails to allege the he could not work.  At best, Plaintiff alleges that, for some unidentified period of time, he did not work in the Baltimore area (Plaintiff, likewise, fails to define the "Baltimore area" with any specificity).  For these reasons, Count VII should be dismissed.

### C.   Plaintiff's conversion claim, Count VIII, should be dismissed.

Count VIII alleges "[Mr.] Lloyd converted Plaintiff's property when [Mr.] Lloyd drove Plaintiff to a bank under the threat of arrest and criminal charges and forced him to withdraw money to give to [Mr.] Lloyd," SAC, ¶ 134, and that "[Mr.] Lloyd exercised dominion over the property when he extorted money from Plaintiff," *id.* ¶ 137.

"A defendant converts a plaintiff's personal property where the defendant intentionally exerts 'ownership or dominion over [the plaintiff]'s personal property in denial of or inconsistent with the [plaintiff]'s right to [the plaintiff's personal] property.'"

17

*Thompson v. UBS Financial Services, Inc.*, 115 A.3d 125, 127 (Md. 2015) (quoting

*Nickens v. Mount Vernon Realty Group, LLC*, 54 A.3d 742, 756 (Md. 2012)).  Under

Maryland law, "[t]he general rule is that monies are intangible and, therefore, not subject

to a claim for conversion."  *Allied Inv. Corp.*, 731 A.2d at 966 (citations omitted).

Generally, "[w]here the defendant 'commingles [the funds] with other monies,' however,

'the money' loses its specific identity and may no longer be the subject of a conversion

action.'"  *Nash*, 2021 WL 1222874, at *8 (quoting *Gibbons v. Bank of Am. Corp.*, No.

JFM-08-3511, 2012 WL 94569, at *9 (D. Md. Jan. 11, 2012)).  Accordingly, an action

for conversion is typically not a means to recover an amount of money and, for such a

claim to survive, there must be plausible allegations that the monies alleged to have been

converted are "'specific segregated or identifiable funds,'" *Allied Inv. Corp.*, 731 A.2d at

966 (citations omitted).

Here, Plaintiff does not allege, for example, that the money paid to Mr. Lloyd was

deposited into a specially designated account, separate from his other funds, or that Mr.

Lloyd had an obligation to return the *specific* money deposited.  *See* SAC ¶¶ 133-38.

Thus, the monies Plaintiff claims in this action are not subject to a conversion claim.  As

a result, Count VIII should be dismissed.

**D.    Plaintiff's official capacity claims should be dismissed.**

The SAC sues Mr. Lloyd "[i]ndividually and in his official capacity as a Baltimore

City Police Officer."  SAC p. 1 (Caption).  The SAC alleges one claim, Count X, under §

1983 against Mr. Lloyd in his official capacity, and seven state law claims against Mr.

Lloyd, Counts I-V and VII-VIII.[6]  Although not explicitly alleged, presumably, each of the state law claims is alleged against Mr. Lloyd individually and in his official capacity. All of these claims should be dismissed.[7]

An official capacity suit against a local government official "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  As a result, for purposes of a § 1983 claim, such as Count X, a plaintiff must allege that the "government official being sued" was "a final policy-making authority for the governmental entity … and the entity's policy … played a role in the constitutional violation." *Swagler*, 2009 WL 10682452, at \*5.  Put differently, to prevail on a § 1983 official capacity suit, "the plaintiff must satisfy the requirement [] established for municipal liability suits in *Monell*." *Miller v. Hamm*, Civ. No. CCB-10-243, 2011 WL 9185, at \*14 (D. Md. Aug. 3, 2011).

Here, Count X should be dismissed because it does not allege that Mr. Lloyd was a final policy making authority for the BPD or the M&CC.  *See* SAC ¶¶ 146-155. Further, Count X should be dismissed as duplicative because Plaintiff alleges a *Monell* claim against the BPD and the M&CC in Count X.  *See id*.  As a result, an official capacity claim against Mr. Lloyd is unnecessary and should be dismissed.  *See Cottman*, 2022 WL 137735, at \*5 ("Where, however, a plaintiff sues both individual officers in

---

[6]     Count IX alleges a claim under § 1983 against Mr. Lloyd in his individual capacity.  That Count is not part of this Section of the Motion, however.

[7]     As to Counts V, VII, and VIII, the argument in this Section is raised as an alternative to those in Section IV. A-C, above.

their official capacities under § 1983, and a municipality under *Monell*, for following a particular 'policy or custom' that resulted in alleged constitutional harm, the claims are duplicative.") (citing cases).

Any state law claims asserted against Mr. Lloyd in his official capacity also should be dismissed because they are barred by State sovereign immunity. This Court applied the State sovereign immunity doctrine to dismiss official capacity state law claims against Anthony Batts, a BPD Commissioner from September 2012 to July 2015. *See Jones*, 2015 WL 4509871, at *1, *8-*10. *Jones* involved claims of, *inter alia*, excessive force filed against BPD Officers, Commissioner Batts, an officer with Morgan State University, and the Chief of the university's police. *Id.* at *1. The *Jones* Court explained that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at *8 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The Court found that, "[a]ccordingly, plaintiffs' suit against Batts in his official capacity is tantamount to an action against the BPD." *Id.* At all relevant times in *Jones*, as is the case here, "the BPD [was] an agency of the State of Maryland." *Id.* (citing *Mayor & City Council of Balt. v. Clark*, 944 A.2d 1122, 1128-30 (Md. 2008)).

The *Jones* Court then examined State sovereign immunity. *Id.* at *9. "Sovereign immunity is the common law doctrine that protects the State from suit without its consent." *Id.* (citing *Davis v. State*, 37 A.2d 880, 885 (Md. 1944)). Where applicable, "[s]tate sovereign immunity bars an individual from maintaining a suit for money

damages against the State of Maryland or one of its agencies, in the absence of an express legislative waiver of immunity." *Id.* (citing *State v. Sharefeldin*, 854 A.2d 1208, 1214 (Md. 2004)). "'[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss for lack of subject-matter jurisdiction.'" *Cunningham*, 888 F.3d at 649 (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

Applied here, because BPD is a State agency and had notice and opportunity to respond to the SAC, Mr. Lloyd is entitled to State sovereign immunity as to Plaintiff's state law official capacity claims, and such claims, as alleged Counts I-V and VII-VIII should be dismissed. *See Jones*, 2015 WL 4509871, at *9.[8]

### E.   The Fourteenth Amendment claim alleged in Count IX should be dismissed.

Count IX alleges a claim under § 1983 against Mr. Lloyd in his individual capacity. SAC ¶¶ 139-145. More specifically, Plaintiff alleges that Mr. Lloyd violated his rights protected under the Fourth and Fourteenth Amendments, "including, but not limited to the right to be free from law enforcement extortion; the right to be free from unreasonable seizures; the right to be free from police kidnapping; freedom to be secure in one's person from unreasonable seizures, freedom from the deprivation of liberty

---

[8]    For the reasons stated in Section I of the argument in the M&CC's memorandum of law supporting its motion to dismiss, which was previously incorporated herein, Mr. Lloyd contends that the M&CC is not considered the employer of Baltimore City Police Officers at the times relevant to the SAC's allegations. Thus, Mr. Lloyd is entitled to sovereign immunity on Plaintiff's state law official capacity claims. Additionally, Mr. Lloyd incorporates herein the BPD's argument on sovereign immunity set forth in Argument Section I of its memorandum of law supporting its motion to dismiss, ECF 36-1, at ECF pp. 11-12.

without due process of law; and freedom from the abuse of power by the police." SAC ¶ 142. Plaintiff also claims a "protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, to bodily integrity and personal security, and his ability to be free from unlawful and unwelcome seizure by the police." *Id.* ¶ 143.

To the extent Count IX alleges a Fourteenth Amendment claim, it should be dismissed because Plaintiff's claim arises, if at all, under the Fourth Amendment. Plaintiff's claims turn on the alleged unlawful seizure of his person and property. *See* SAC ¶ 142. Plaintiff effectively claims that he was unlawfully arrested. *See id.* A claim for unlawful arrest, search, and seizure arises under the Fourth Amendment. *See Lytes v. Smith*, 11 F. Supp. 3d 527, 539 (D. S.C. 2014), *aff'd*, 585 Fed. Appx. 51 (4th Cir. 2014) ("Because Plaintiff asserts wrongful arrest, the Fourth Amendment, not the Fourteenth Amendment, is the relevant constitutional provision."); *Schloss v. Lewis*, No. JFM-15-1938, 2016 WL 1451246, at *9 (D. Md. Apr. 12, 2016), *aff'd sub nom. Schloss v. Abey*, 691 Fed. Appx. 710 (4th Cir. 2017) (dismissing plaintiff's substantive due process claim because the Fourth Amendment specifically protects against unlawful searches and seizures).

Where, as here, "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, should be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (internal quotation marks omitted). Because Plaintiff's claim specifically

implicates that Fourth Amendment, the Fourth Amendment, not the Fourteenth Amendment, explicitly governs Plaintiff's claim in Count IX. For these reasons, any claim in Count IX under the Fourteenth Amendment should be dismissed.

## V.     CONCLUSION

For these reasons, Mr. Lloyd requests that this Court grant this Motion, and dismiss with prejudice and without leave to amend Counts V, VII, VIII, and X, the claim for violation of the Fourteenth Amendment alleged in Count IX, and all official capacity claims alleged against Mr. Lloyd in Counts I-V and VII-VIII.

Dated: July 31, 2023

*/s/ Christopher C. Jeffries*
Christopher C. Jeffries (Bar No. 28587)
John A. Bourgeois (Bar No. 11834)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax: (410) 539-1269
cjeffries@kg-law.com
jbourgeois@kg-law.com

*Counsel for James A. Lloyd*

23