IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LUIS ALFONSO TORRES HERNANDEZ, | |
| *Plaintiff*, | |
| v. | Civil No.: 1:23-cv-01016-JRR |
| JAMES ABRAHAM LLOYD, *et al.*, | |
| *Defendants*. | |

<u>**MEMORANDUM OPINION**</u>

Pending before the court is Defendants Baltimore Police Department's ("BPD") and James Abraham Lloyd's Joint Motion to Bifurcate and Stay Discovery. (ECF No. 68; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND

The court incorporates the extensive background set forth in its memorandum opinion at ECF No. 58. Briefly, Plaintiff completed a stone patio for Lloyd's home. (ECF No. 29 ¶¶ 11–14.) Lloyd later called Plaintiff related to minor issues with the patio, and Plaintiff returned to Lloyd's home to inspect the patio. *Id.* ¶¶ 15–16. Plaintiff agreed to repair the issue and enlarge the patio at cost. *Id.* ¶ 16. When Plaintiff arrived to perform the work, Lloyd and three BPD detectives (former Defendants Taylor, Larbi, and Diaz), on duty and acting within the scope of their employment, were present, upon Lloyd's order. *Id.* ¶¶ 17–18. Thereafter, one of the detectives ran a search of Plaintiff's driver's license and discovered his license was suspended; Lloyd then threatened to arrest Plaintiff if he did not refund Lloyd for the patio fee. *Id.* ¶¶ 28–29. Lloyd then searched for Plaintiff's nearest bank location in order to transport him to withdraw the funds. *Id.* ¶ 34. In fear for his safety, Plaintiff got into Lloyd's police car,

whereupon Lloyd drove Plaintiff to Plaintiff's bank.  (ECF No. 29 ¶ 36.)  Along the way, Lloyd stated several times: "You are going to give me my money back and I'm going to give you freedom."  *Id.* ¶¶ 37–38.  Plaintiff then obtained a cashier's check made payable to Lloyd for $3,500, and gave it to Lloyd.  *Id.* ¶ 39.  From the credit union, Lloyd drove Plaintiff back to his vehicle at Lloyd's home, but Plaintiff was fearful he would be arrested for driving on a suspended license.  *Id.* ¶ 41.  Lloyd told Plaintiff he would not be arrested and ordered him to leave.  *Id.*

Plaintiff then filed this action against Defendants BPD and Lloyd, as well as the other BPD detectives.  Following previous motions, the following counts and Defendants remain:

Count I: False Imprisonment against Defendant Lloyd

Count II: False Arrest against Defendant Lloyd

Count III: Violation of Article 24 of the Maryland Declaration of Rights against Defendant Lloyd

Count IV: Violation of Article 26 of the Maryland Declaration of Rights against Defendant Lloyd

Count VII: Intentional Infliction of Emotional Distress against Defendant Lloyd

Count IX: Violation of 42 U.S.C. § 1983 against Defendant Lloyd

Count X: Violation of 42 U.S.C. § 1983 against BPD (the "*Monell* Claim")

(ECF No. 29; ECF No. 60.)  The court now turns to Defendants' requested relief set forth in their Motion.

## II.   ANALYSIS

Defendants ask this court to bifurcate Plaintiff's § 1983 *Monell*[1] claim against BPD and

---

[1] By way of background, in *Monell v. Department of Social Services of City of New York*, the Supreme Court held that 42 U.S.C. § 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes'

his § 1983 against Defendant Lloyd (in his individual capacity).  (ECF No. 68.)  Defendants contend that doing so would further judicial expediency and economy, and avoid the risk of prejudice against Defendants.  (ECF No. 68-1 at pp. 3–8.)  Defendants also request that discovery related to Plaintiff's *Monell* claim be stayed pending resolution of the § 1983 claim against Defendant Lloyd.  *Id.* at pp. 8–9.  Plaintiff opposes bifurcation as inappropriate because his alleged injuries are not attributable solely to Defendant Lloyd; therefore, Plaintiff argues, BPD could be found liable even Defendant Lloyd is not.  (ECF No. 71 at pp. 4–6.)  Plaintiff urges further that separate trials are unnecessary, inefficient, and pose no risk of unfair prejudice to Defendants.  *Id.* at pp. 6–7.

### A.  Motion to Bifurcate

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  FED. R. CIV. P. 42(b).  "Notably, Rule 42(b) is disjunctive, meaning '[o]nly one of these criteria need be met to justify bifurcation.'"  *Saltz*, 538 F. Supp. 3d at 561 (quoting *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996)).  The decision to bifurcate claims for trial is committed to the court's "broad discretion," and "that discretion will be set aside only if clearly abused."  *Id.* (quoting *Beasley v. Kelly*, DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010)).

While "the decision of whether to bifurcate is a fact-specific inquiry,"  *Cottman v. Baltimore Police Dep't*, No. 21-CV-00837-SAG, 2022 WL 2073852, at *2 (D. Md. June 9,

---

an employee to violate another's constitutional rights."  436 U.S. 658, 692 (1978).  Accordingly, "a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights."  *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 554 (D. Md. 2021) (citing *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403, 117 (1997) (citations omitted)).

2022), this court has held that "[c]ases that contain *Monell* claims 'are good candidates for bifurcation.'"  *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 460 (D. Md. 2020) (quoting *Beasley*, 2010 WL 3221848, at \*3).  "Judges in this district have repeatedly ruled that bifurcation 'is appropriate and often desirable' in cases involving both § 1983 claims against individual police officers and *Monell* claims."  *Saltz*, 538 F. Supp. 3d at 561 (quoting *Brown v. Bailey*, No. CIV.A. RDB-11-01901, 2012 WL 2188338, at \*4 (D. Md. June 13, 2012)).

A plaintiff's § 1983 *Monell* claim generally "hinge[s] on his ability to show that [individual defendants] violated his constitutional rights."  *Haughie v. Wexford Health Sources, Inc.*, No. CV ELH-18-3963, 2020 WL 1158568, at \*16 (D. Md. Mar. 9, 2020) (quoting *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).  *See Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) (discussing bifurcated claims against officer and municipality); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that *Monell* does not authorize damages against municipal corporation based on actions of officer where jury concluded that officer "inflicted no constitutional harm" and was not instructed on affirmative defense of officer).

That notwithstanding, courts have recognized "narrow circumstances in which 'a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality.'"  *Johnson*, 500 F. Supp. 3d at 465 (citing *Int'l Ground Transp. v. Mayor And City Council Of Ocean City, MD*, 475 F.3d 214, 219 (4th Cir. 2007) ("[A] situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality.")).  Such narrow circumstances are limited to where "a finding would not create an *inconsistent* verdict as to the individual defendants," such as "where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one

individual's actions are sufficient to establish personal liability for the violation," *see e.g.*, *Speer v. City of Wynne, Arkansas*, 276 F.3d 980, 986 (8th Cir. 2002); and where "the injuries complained of are not solely attributable to the actions of named individual defendants," *see, e.g., Barrett v. Orange Cnty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). *Haughie*, 2020 WL 1158568, at *17 (quoting *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010)) (emphasis in original).  *See also Jones v. Chapman*, No. CV ELH-14-2627, 2017 WL 2472220, at *44 (D. Md. June 7, 2017) (same).

While BPD's *Monell* liability may depend on Defendant Lloyd's liability, the court need not reach any such conclusion, because whether or not that be the case is not determinative of whether to bifurcate and stay.  *See Haughie*, 2020 WL 1158568, *18 (finding bifurcation appropriate and declining to address whether the *Monell* claim would succeed absent a finding of liability by the individual defendants).  *Cf. Thomas*, 604 F.3d at 305 (explaining that determination of whether the county's liability was dependent on its officer required the court to look to factors including "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth").

The rationale for bifurcation of *Monell* claims in § 1983 actions is not just that those claims generally or often hinge on individual defendant liability for constitutional violations. Bifurcation (and a related stay) also work to "spare the parties from expending valuable resources in discovery, because resolution of the claims as to the individual defendants may obviate the need to litigate the *Monell* claim." *Johnson*, 500 F. Supp. 3d at 460.  Moreover, bifurcation also "prevent[s] the potential prejudice to individual defendants that might result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs." *Id.*

As the court previously held in *Haughie*, bifurcation is similarly appropriate here, because it will "promote judicial economy, conserve the parties' resources, and avoid prejudice" to Defendant Lloyd without prejudicing Plaintiff.   2020 WL 1158568, at *18.   The court's reasoning is persuasive here:

> As a practical matter, it would save time and resources, and promote judicial economy, to defer consideration of the *Monell* claim until after a determination of the liability of the Individual [] Defendants.   If [the plaintiff] fails to succeed on his claim of constitutionally inadequate medical care, this may obviate altogether the basis for a *Monell* claim.   If he does not succeed on the individual claims, he might also choose to forgo the *Monell* claim.   And, if he does succeed in the claims against the Individual [] Defendants, Wexford might consider a resolution of the *Monell* claim, without the need for a trial.   Any one of these scenarios would spare the Court and the parties of the burdens and challenges of litigating the *Monell* claim. . . .

> Notably, evidence of any prior failures of Wexford to provide adequate care to inmates in unrelated situations may be admissible against Wexford in regard to the *Monell* claim.   But, such evidence is not likely to be admissible against the Individual [] Defendants.

> Such evidence is also potentially inflammatory in regard to the individual defendants, and it would be difficult for the jury to compartmentalize such evidence.   *See Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case."); [*Taylor v. Maryland*, DKC-10-2167, 2010 WL 5247903, at *2 (D. Md. Dec. 16, 2020)] ("[W]hile a jury instruction could limit the harm to [the defendant] from prejudicial evidence, no instruction is likely to remove entirely the potential for prejudice."); *Beasley*, 2010 WL 3221848, at *3 (finding that such evidence against a municipality "would be highly prejudicial to the individual government employees").   Bifurcation of the *Monell* [c]laim will allow the Court to separate issues and evidence as necessary to avoid prejudice.

6

> In addition, bifurcation will facilitate an expeditious trial as to the Individual [] Defendants (assuming the constitutional claim survives to trial), because it avoids the delay inherent in the extensive discovery that would be required to establish a *Monell* claim. This would lead to a reduction of costs, without any real prejudice to plaintiff. And, if the case goes to trial on the threshold claim, this avoids prolonging the trial.

*Haughie*, 2020 WL 1158568, at \*18–19 (record citations omitted).

The same rationale is compelling here. Defendants correctly note that, as proving a *Monell* claim is rather exacting, discovery will be "an enormous and lengthy task." And the risk of prejudice to Defendant Lloyd is high where Plaintiff's *Monell* claim will focus on evidence of alleged prior police misconduct. (ECF No. 68-1 at p. 9.) Plaintiff's reliance on non-§ 1983 *Monell* cases finding that bifurcated trials are rare and bifurcated discovery is less efficient is not compelling. (ECF No. 71 at p. 6–7.) It ignores the general practice of this district to consider bifurcation based on the substantive nature of the claims at issue.

Contrary to Plaintiff's contention, "[s]treamlining the issues and limiting discovery . . . initially will curb rather than increase costs, and if a second trial is necessary, any issues litigated in the first trial will be binding upon the parties during the second phase." *Taylor v. Maryland*, No. CIV.A. DKC 10-2167, 2010 WL 5247903, at \*2 (D. Md. Dec. 16, 2010). The extensive discovery associated with a *Monell* claim would cause an inherent delay in discovery, and will further delay trial for all Defendants. For all the foregoing reasons, bifurcation and a stay of discovery on the *Monell* claim is warranted.

## III.    CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Joint Motion to Bifurcate and Stay Discovery (ECF No. 68) will be granted.

October 8, 2024

_____/s/_____

Julie R. Rubin
United States District Judge
